BRADLEY J. HAMBURGER (*pro hac vice forthcoming*)
MEGAN M. COONEY (*pro hac vice pending*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:  213.229.7000
Email:  bhamburger@gibsondunn.com
Email:  mcooney@gibsondunn.com

Montgomery Y. Paek, Esq.
Bar No. 10176
Amy L. Thompson, Esq.
Bar No. 11907
LITTLER MENDELSON, P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, Nevada 89169
Telephone:     702.862.8800
Fax No.:        702.862.8811
Email:  mpaek@littler.com
Email:  athompson@littler.com

Attorneys for Defendant
AMAZON.COM SERVICES LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| JASMINE SOLARES and ESTEFANIA CORREA,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES LLC,<br><br>Defendants. | CASE NO. 2:24-CV-00881-EJY<br><br>**DEFENDANT AMAZON.COM SERVICES LLC'S MOTION TO DISMISS AND/OR STAY THE CASE**<br><br>**ORAL ARGUMENT REQUESTED** |

Defendant Amazon.com Services LLC, by and through its counsel of record, respectfully moves this Court for an order dismissing this case or, alternatively, staying it while the Nevada Supreme Court determines whether to accept the certified question in *Malloy v. Amazon.com Services, LLC.*  This motion is made and supported by the below memorandum of points and authorities, all of pleadings on file with the Court in this matter, and any oral argument the Court may entertain.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The unpaid wages claims in this case—which are premised on the notion that time associates spent in security screenings at an Amazon facility is compensable—are an attempt to circumvent the U.S. Supreme Court's holding in *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27 (2014), that time spent in such screenings is not compensable under the Fair Labor Standards Act.  As the Supreme Court squarely held in *Busk*, "time spent waiting to undergo and undergoing . . . security screenings" is not "compensable under the FLSA."  *Id.* at 37.  Because these claims fail as a matter of law under the FLSA and Nevada law (which generally tracks the FLSA, as both the Nevada Supreme Court and Ninth Circuit have held, *see Terry v. Sapphire Gentlemen's Club*, 336 P.3d 951, 955–56 (Nev. 2014); *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 900–01 (9th Cir. 2013)), the Court should dismiss the complaint with prejudice.

*First,* Plaintiffs are not entitled to compensation under the FLSA.  Plaintiffs' FLSA claim is premised on Amazon's alleged failure to pay them for the time spent going through voluntary security screening during meal periods, voluntarily traveling to breakrooms during meal periods, and clocking in at the end of meal periods.  But before Plaintiffs can claim entitlement to pay for these activities, they must demonstrate that the activity is work, is integral and indispensable to their principal activities, and the time spent on activity was more than *de minimis*.  *See Bamonte v. City of Mesa*, 598 F.3d 1217, 1224 (9th Cir. 2010).  Each of these theories of liability fail.

Plaintiffs cannot demonstrate that the time spent in voluntary security screening, if they elected to leave the facility for meal periods, is compensable.  Associates could decide whether to take their breaks on site (no screening) or off-site (screening), and this voluntary choice benefits Plaintiffs, not Amazon, meaning any security screenings during meal periods was not "work."  *See Balestrieri v. Menlo Park Fire Prot. Dist.*, 800 F.3d 1094, 1100–01 (9th Cir. 2015).  And this screening, as with pre- or post-shift screening, was not integral and indispensable to the principal activities for which Plaintiffs were employed, as the Supreme Court held in *Busk* and as the Ninth Circuit recently concluded in *Buero v. Amazon.com Services, Inc.*, 61 F.4th 1031, 1049 (9th Cir. 2023).  But even if the time spent in screening was "work" that was integral and indispensable to

Plaintiffs' principal activities, Plaintiffs acknowledge it took only a few minutes and the "general rule" is that "employees cannot recover for otherwise compensable time if it is *de minimis*." *Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069, 1080 (9th Cir. 2016). In fact, "the Supreme Court has long held that, 'in light of the realities of the industrial world,' a 'few seconds or minutes of work beyond the scheduled working hours . . . may be disregarded.'" *Id.* (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946)).

Plaintiffs also are not entitled to pay for the time spent walking to and from breakrooms if they elected to stay on site during meal periods. This, too, was a voluntary choice that benefited Plaintiffs. The Ninth Circuit has already held that "walking to the lunchroom" is not "a work duty" because it "is not necessary to the plaintiffs' principal work." *Busk v. Integrity Staffing Sols., Inc.*, 713 F.3d 525, 532 (9th Cir. 2013) (*Busk I*), *rev'd on other grounds*, 574 U.S. 27 (2014). Finally, this alleged walking time took no more than a *de minimis* amount of time and therefore fails for that reason too. Plaintiffs' assertion that they should be compensated for time they spent waiting to clock back in at the end of their meal periods fares no better. This time is neither work nor integral and indispensable to Plaintiffs' principal duties and, as with their other theories, lasted no more than a few minutes.

***Second,*** Plaintiffs are not entitled to unpaid wages and waiting time penalties under Nevada law. The Nevada Supreme Court has held that courts should look to "federal courts' interpretation of" the FLSA when determining what constitutes "work" under Nevada law. *Rite of Passage, ATCS/Silver State Acad. v. Nev. Dep't of Bus. & Indus.*, 2015 WL 9484735, at *1–2 (Nev. Dec. 23, 2015). Because Plaintiffs seek compensation for activities that are not "work" under the FLSA or are *de minimis*, their state law claims fail for the same reason. Further, because Nevada law tracks the FLSA unless the "language of the relevant statutes [is] entirely conflicting," *Terry*, 735 P.3d at 956—and Nevada law does not entirely contradict the Portal-to-Portal Act—the Nevada Supreme Court would likely conclude Nevada law incorporates the Portal-to-Portal Act. Therefore, Plaintiffs are not entitled to compensation for postliminary screening under Nevada law, consistent with the Supreme Court's holding in *Busk*.

At a minimum, the Court should stay this case while the Nevada Supreme Court reviews

the question of whether Nevada law incorporates the Portal-to-Portal Act. On July 2, Judge Traum in *Malloy v. Amazon.com Services, LLC*, 2024 WL 3276274 (D. Nev. July 1, 2024), certified that precise question of law to the Nevada Supreme Court. If the Nevada Supreme Court accepts this question, it will decide a key question of law that will impact this case. Therefore, this Court should exercise its inherent power to stay this case "pending the [Nevada] Supreme Court's disposition" of the certified question "until the proceedings in the [Nevada] Supreme Court have concluded." *U.S. Bank Nat'l Ass'n v. Underwood Partners LLC*, 2017 WL 11865291, at *2 (D. Nev. Apr. 12, 2017).

Because the asserted claims fail as a matter of law, the Court should dismiss Plaintiffs' complaint in its entirety with prejudice. At a minimum, this Court should stay this case until the Nevada Supreme Court resolves the certified question in *Malloy*.

## II.    BACKGROUND[1]

Plaintiffs are current and former associates who worked at Amazon's LAS2 Returns Facility in Nevada as "Customer Returns Processor[s] and/or Problem Solver[s]." Compl. ¶¶ 7, 9. Plaintiffs allege they had options for where to take their meal periods after clocking out. *Id*. ¶¶ 23–24. If they wanted to go offsite or to one set of larger breakrooms, they could go through security screening, which would take up to "5 to 10 minutes." *Id*. ¶¶ 23, 26. Alternatively, they could walk "two to five minutes" to what Plaintiffs call "secondary breakrooms" for their meal period without going through any screening. *Id*. ¶ 25. In other words, Plaintiffs had the choice to go through security screening during their meal periods or "stay in" and "eat their meal without submitting to" screening. *Id.* ¶ 23. At the end of their meal periods, Plaintiffs allege they then had to wait in a short line to clock back in before finishing their shift at a different workstation which took approximately "one to three minutes." *Id*. ¶¶ 27, 29. Plaintiffs also allege that they had to undergo exit screening after clocking out at the end of each shift, which could take "approximately 10 to 15 minutes." *Id*. ¶¶ 12, 14, 16.

---

[1] While Amazon must accept Plaintiffs' allegations as true for purposes of this motion, it disputes Plaintiffs' allegations regarding the nature of the screenings at issue. At this stage, however, this dispute is immaterial given that Plaintiffs' claims fail as a matter of law even if their erroneous allegations are accepted as true.

Plaintiffs filed this putative class and collective action on May 10, 2024.  They assert claims for (1) violations of the FLSA for failure to pay overtime wages; (2) unpaid wages under Nevada law; and (3) "severance pay" under Nevada law.  Plaintiffs' FLSA claim asserts that Amazon did not, but should have, compensated them for the time spent going through screening during their meal breaks, walking to and from secondary breakrooms, and waiting in line to clock back in after their meal period.  *Id.* ¶¶ 49–50.  Plaintiffs' Nevada claims are premised on the same allegations as their FLSA claim, with the exception that they are seeking only under Nevada law compensation for the time spent in exit security screening.  *Id*. ¶¶ 57, 62–64.  Plaintiffs seek to represent "all persons similarly situated to the Plaintiffs' who worked for the defendant Amazon at its LAS2 location in Clark County, Nevada."  *Id.* ¶ 34.

On July 2, 2024, Judge Traum in *Malloy* certified the following question to the Nevada Supreme Court under Rule 5 of the Nevada Rules of Appellate Procedure:  "Does Nevada law incorporate the PPA?"  *Malloy*, 2024 WL 3276274, at *3.  The plaintiffs in *Malloy* allege that Amazon did not compensate them for all hours worked under Nevada law in part based on COVID-19 screening.  The court denied Amazon's motion to dismiss the Nevada state law claims because it concluded Nevada law did not incorporate the Portal-to-Portal Act, but certified that question to the Nevada Supreme Court.  *Id.* at *1–3.

### III.    STANDARD OF REVIEW

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 496 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  On a motion to dismiss, the Court must first separate the complaint's legal conclusions—which are disregarded—from its factual allegations.  *Iqbal*, 556 U.S. at 678–79.  The remaining factual allegations must "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  If the complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Plaintiffs must plead more than "threadbare recitals" or "vague allegations, which are conclusory in nature and without factual support."  *Karriem v. Cellco*

*P'ship Inc.*, 2022 WL 1222891, at *3 (D. Nev. Mar. 25, 2022).  Claims may also be dismissed on a dispositive issue of law.  *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015).

# IV.    ARGUMENT

## A.    Plaintiffs' FLSA Claim Fails as a Matter of Law

Plaintiffs' FLSA claim fails because time spent walking through security screening during meal periods, walking to and from on-site breakrooms, and waiting to clock back in after meal periods is not compensable under the FLSA.  To determine whether an activity is compensable under the FLSA, courts ask: (1) whether the activity constituted "work," (2) whether the activity was an "integral and indispensable" duty, and (3) whether the activity was *de minimis*.  *Bamonte*, 598 F.3d at 1224.  Plaintiffs' FLSA claim fails at every step.

### 1.    Choosing to Undergo Voluntary Security Screening Is Not Compensable Under the FLSA

Plaintiffs' first theory of liability is that they should be compensated for the time spent undergoing security screening at the start and end of meal periods when they chose to take their breaks off-site or in certain breakrooms.  This voluntary activity does not constitute "work" within the meaning of the FLSA, as it was not "integral and indispensable" to their jobs, and thus it was not compensable under the FLSA.  Moreover, any time spent in this activity was *de minimis*, which is an independent reason it was not compensable.

#### a.    Voluntary Security Screening Is Not Work

Whether an activity is "work" under the FLSA "contains two conjunctive components"—the activity must be "controlled or required by the employer" and it must be "pursued necessarily and primarily for the benefit of the employer."  *Bamonte*, 598 F.3d at 1224–25.  Both prongs must be met for an activity to qualify as compensable work under the FLSA.  *Id.*

Plaintiffs' allegations establish that going through security screening during meal periods is not a required activity.  As the complaint makes clear, associates have the option to leave the facility during meal periods, but they do not have to do that and instead are "allowed . . . to stay in" for their meal period "without submitting to" security screening.  Compl. ¶ 23.  In other words,

Plaintiffs were not *required* to undergo any screening during meal periods, as they were under no obligation to leave the worksite.  "[E]ntirely optional" activities do not constitute work within the meaning of the FLSA.  *Bamonte*, 598 F.3d at 1225–26 (holding "donning and doffing at the workplace [was] entirely optional" and therefore not compensable); *see, e.g.*, *Ashely v. Youngblood*, 2017 WL 2672752, at *4–6 (E.D. Cal. June 21, 2017) (dismissing a "doffing" claim under the FLSA because the decision to change clothes at work following their shift was employee's preference rather than employer's requirement); *Arnold v. Schreiber Foods, Inc.*, 690 F. Supp. 2d 672, 682 (M.D. Tenn. 2010) (voluntary donning/doffing during meal period was not compensable).

These voluntary screenings are also not compensable work because they are not pursued primarily for the benefit of Amazon.  Undergoing a screening during the workday is a direct consequence of "the employee's choice to exit Amazon's premises in the middle of a work shift," which "serves no benefit upon Amazon."  *Vaccaro v. Amazon.com.dedc, LLC*, 2020 WL 3496973, at *6 (D.N.J. June 29, 2020) (dismissing comparable New Jersey unpaid time claim based on meal period screening).  Rather, that choice "primarily . . . benefit[s] the employee," particularly given that leaving the facility is within the discretion of associates.  *Id.*  Accordingly, time spent undergoing voluntary security screening during meal periods is not "work" under the FLSA.

>  **b.**    **Exit Security Screenings Are Not Integral or Indispensable to Plaintiffs' Principal Activities**

The time spent in screenings during meal periods is also not compensable because binding case law makes clear that such screenings are not "integral and indispensable" to Plaintiffs' principal activities.

In *Busk*, the Supreme Court concluded that pre- and post-shift security screenings were not compensable because they were not "integral and indispensable" to the associates' principal activities because such "screenings [are] not an intrinsic element of retrieving products from warehouse shelves or packaging them for shipment."  574 U.S. at 28, 35.  As in *Busk*, Amazon "did not employ its workers to undergo security screenings, but to retrieve products from warehouse shelves and package those products for shipment to Amazon customers."  *Id.* at 35.

That means that such screenings could have been eliminated altogether "without impairing the employees' ability to complete their work." *Id.* This reasoning, which was dispositive in *Busk*, is also dispositive here.

If any more were needed, the Ninth Circuit's recent decision in *Buero v. Amazon.com Services, Inc.*, 61 F.4th 1031 (9th Cir. 2023) (per curiam), makes clear that Plaintiffs' meal period theory of liability fails. In *Buero*, the Ninth Circuit held that the very practice challenged here— security screening during meal periods—was not compensable under either federal law or Oregon law (which tracked federal law) because it was not "integral and indispensable" to the employees' duties. *Id.* at 1033. The Fourth and Seventh Circuits have similarly concluded that, under the FLSA, employees are relieved from work duties during meal periods even if they need to perform preparatory or concluding activities, such as donning and doffing clothes. *See Sepulveda v. Allen Fam. Foods, Inc.*, 591 F.3d 209, 216 n.4 (4th Cir. 2009) (applying 29 C.F.R. § 785.19); *Mitchell v. JCG Indus., Inc.*, 745 F.3d 837, 842 (7th Cir. 2014) (same). There is no reason to deviate from this precedent. Undergoing security screening is little more than part of a "bona fide meal period" that, like "donning and doffing [that] occur[s] before and after employees eat their meals," is "non-compensable." *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 369 (4th Cir. 2011). That is particularly true here, given that Plaintiffs are in complete control as to whether to be subjected to a security screening during meal periods to begin with. *See* Compl. ¶ 23.

Citing *IBP v. Alvarez*, 546 U.S. 21 (2005), Plaintiffs assert that screenings were "integral" to their jobs because Amazon required Plaintiffs to go to a different workstation after their meal period, therefore turning the screening time into "travel time." Compl. ¶ 48(b). Focusing on end-of-shift and start-of-shift activities, *Alvarez* held that time walking between principal activities is compensable and an employee must be compensated for the "continuous workday," but it makes no mention of meal period activities. 546 U.S. at 37–41. Plaintiffs' argument, in essence, is that any time they spent between workstations is compensable, which would nullify the FLSA's mandate that "[b]ona fide meal periods are not worktime." 29 C.F.R. § 785.19. That is why courts have held that time spent, for example, "donning and doffing a few items, washing, and walking to and from the cafeteria" during meal periods is not compensable. *Sepulveda*, 591 F.3d at 216

n.4.  Plaintiffs cannot separate walking through screening from the fundamental premise that "[t]he meal break is for [their] benefit," with the screening being "incidental to their eating lunch," *Mitchell*, 745 F.3d at 840 (being required to change clothes onsite before leaving for meal period is not compensable because "the employer does not provide a meal break so that the employees can don and doff" clothing)—and during which time Plaintiffs are not "required to perform any duties," 29 C.F.R. § 785.19.  There is no reason that time spent walking through optional screening is compensable time simply because an employee goes to a different site after clocking back in.

Nor is this like split-shift travel time cases where a "break" is actually used to travel between two different sites.  *See, e.g.*, *Amalgamated Transit Union v. MBTA*, 94 F. Supp. 3d 47, 59 (D. Mass. 2015) (split-shift travel time may be compensable); *United Transp. v. City of Albuquerque*, 178 F.3d 1109, 1112 (10th Cir. 1999) (bus drivers who worked "split shifts" needed to be compensated for the time spent going between the "relief points" at the end of one shift and start of another).  Unlike split-shift travel, where "drivers *must* get to and from diverse relief points" at the end of one shift and start of another without compensation, Plaintiffs "can obviously choose" to go through screening or not and, in any event, are not traveling between "diverse" locations during their meal periods.  *Albuquerque*, 178 F.3d at 1120 (distinguishing split-shift travel from meal period travel).  To the contrary, Plaintiffs are already compensated for the actual "travel" time between the different workstations:  They are paid from the time they walk from the first workstation to the time clocks to clock out, then from the time they walk from the time clocks after clocking in to the second workstation at the same facility.  Compl. ¶¶ 18, 21.  That Plaintiffs take a meal period after clocking in and out of time clocks at the same facility does not render any walking time during that meal period "integral" to Plaintiffs moving from one station to another.

If Plaintiffs' theory of liability was accepted, any walking during a meal period would be compensable.  But the "integral and indispensable" test requires more, and Plaintiffs have not plausibly alleged that going through optional screening during a meal period is "integral and indispensable" to their principal activities.

        **c.**      **Time Spent in Security Screenings During Meal Periods Is *De Minimis***

Even assuming security screening during meal periods is compensable work, Plaintiffs fail

to plausibly allege that the time spent in the screening was more than *de minimis*.  "When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours," it is not compensable under the FLSA.  *Alvarez v. IBP, Inc.*, 339 F.3d 894, 903 (9th Cir. 2003), *aff'd*, 546 U.S. 21 (2005) (quoting *Anderson*, 328 U.S. at 692).  In determining whether otherwise compensable time is *de minimis*, the Ninth Circuit considers three factors: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work."  *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984).  Although "[n]o rigid rule can be applied with mathematical certainty," "[m]ost courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable."  *Id.* at 1062; *see Young v. Beard*, 2015 WL 1021278, at *11 (E.D. Cal. Mar. 9, 2015).  That is why, as explained above, "the Supreme Court has long held that, 'in light of the realities of the industrial world,' 'a few seconds or minutes of work beyond the scheduled working hours . . . may be disregarded.'"  *Corbin*, 821 F.3d at 1080 (quoting *Anderson*, 328 U.S. at 692).

For example, the Ninth Circuit in *Corbin* applied the three-part *Lindow* test to bar a compensability claim under the FLSA for time spent logging onto a program before beginning their workday.  *Id.* at 1082.  The court reasoned that the practical administrative difficulty in cross-referencing every employee's log-in/out pattern was high because it would require "double-check[ing] four time stamps (clocking in/out for work; clocking in/out for lunch) for each employee."  *Id.* at 1081.  Moreover, the time at issue was only one minute and the plaintiff irregularly logged into the program prior to clocking in.  *Id.* at 1082.

Here, too, Amazon would be greatly burdened by tracking each associates' meal period patterns to "double check" the time it took for associates who chose to undergo security screening against "four time stamps"—(clocking in/out for work; clocking in/out for lunch).  Indeed, even the plaintiffs themselves do not offer a specific allegation of time spent, instead opting for an approximate range.  Compl. ¶ 26.  Specifically, Plaintiffs allege that Amazon's security screenings turn an "approximately one minute" walk into "5 to 10 minutes" because associates had to wait for and undergo screening.  *Id.* ¶¶ 24, 26.  Although Plaintiffs are unclear about how long the

screenings took (compared to waiting in line to walk through the screenings), Plaintiffs' allegations at most establish that the entire screening process resulted in a four- to nine-minute delay, which falls within the *de minimis* standard. *See Lindow*, 738 F.2d at 1063; *Corbin*, 821 F.3d at 1080.

Because "as a matter of logic" the few minutes Plaintiffs spend in such screenings is below the 10-minute threshold that courts typically rely on to differentiate compensable time from *de minimis* time, this time is not compensable. *Alvarez*, 339 F.3d at 904. Thus, even if time spent in security screenings during meal periods was theoretically compensable, the short amount of time alleged here would not be compensable.

### 2. Walking to and from Breakrooms Is Not Compensable Under the FLSA

Plaintiffs also allege that, when they did not go through security screening and instead took their meal periods at on-site breakrooms, Amazon improperly withheld pay for the time spent traveling to and from the time clocks and these secondary breakrooms. Compl. ¶ 30. As with Plaintiffs' security screening theory, this theory of liability fails for multiple reasons.

#### a. Walking to Breakrooms Is Not Work

Walking to and from breakrooms while on a meal period is not "work." As with security screening, Plaintiffs are not "required" to walk to breakrooms and time spent walking during meal periods is not "primarily for the benefit of the employer." *Bamonte*, 598 F.3d at 1224–25. Rather than requiring Plaintiffs to stay put, Amazon permits Plaintiffs to leave the premises or to take their breaks at a breakroom. This choice "serves primarily to benefit the employee" and confers "no benefit on Amazon." *Vaccaro*, 2020 WL 3496973, at *6.

#### b. Walking to Breakrooms Is Not Integral or Indispensable to Plaintiffs' Principal Activities

Even assuming walking to and from breakrooms is "work" under the FLSA, this activity is not integral and indispensable to Plaintiffs' principal activities. In fact, Plaintiffs' theory is squarely precluded by the Ninth Circuit's decision in *Busk*. In *Busk*, the plaintiffs sought compensation under the FLSA for time spent walking to the lunchroom because the employer placed "the time clocks far from the lunchroom," forcing employees to "walk to the lunchroom in order to each lunch" while off the clock. *Busk I*, 713 F.3d at 532. The Ninth Circuit held that

"walking to the lunchroom is not a work duty" because "it is not necessary to the plaintiffs' principal work as warehouse employees." *Id*. Therefore, "walking to the lunchroom" is "not compensable under federal law." *Id*. at 532–33.

### c. Any Time Spent Walking to the Breakrooms Was *De Minimis*

Finally, Plaintiffs have failed to plausibly allege that the time spent walking between the time clocks and breakrooms is more than *de minimis*. Plaintiffs allege that if they took their meal periods at the secondary breakrooms, it would take "approximately two to five minutes" to walk from the time clocks to the breakroom. Compl. ¶ 25. Even if this time was compensable work and occurred daily, this time is *de minimis* because this activity "concerns only a few . . . minutes of work" and falls below the 10-minute *de minimis* threshold. *Alvarez*, 339 F.3d at 903–04.

### 3. Clocking In After Meal Periods Is Not Compensable Under the FLSA

Plaintiffs' final theory of liability under the FLSA is that Amazon should have compensated them for the handful of minutes they claim they spent in line at the end of their meal period waiting to clock back in. Compl. ¶¶ 29, 48. This nominal time, as with the time spent in security screening and walking to and from breakrooms, is not compensable under the FLSA.

### a. Clocking In After Meal Periods Is Not Work

Clocking in following a meal period is not work. As discussed above, work must be an activity "that is pursued necessarily and primarily for the benefit of the employer." *Bamonte*, 598 F.3d at 1224–25 (citations omitted). Plaintiffs again fail to plausibly allege that this activity, which is part and parcel of taking an off-the-clock meal period, benefited Amazon. Because the FLSA "does not require employers to provide meal periods at all," *Mitchell*, 745 F.3d at 840, tasks associated with meal periods primarily benefited associates like Plaintiffs. Although associates need to clock back in and wait in line to resume work, this time is part of associates' meal period "in the middle of a work shift," *Vaccaro*, 2020 WL 3496973, at *6, which was not "primarily for the benefit of [Amazon]," *Bamonte*, 598 F.3d at 1224–25.

### b. Clocking In After Meal Periods Is Not Integral or Indispensable to Plaintiffs' Principal Activities

Waiting to clock back in after a meal period is also not compensable because it is not an

integral or indispensable activity.  As federal regulations make clear, time spent "checking in and out and waiting in line to do so" is not compensable under the FLSA.  29 C.F.R. § 790.7(g).  While these regulations relate to preliminary and postliminary activities under the Portal-to-Portal Act, and not mid-shift activities, the Ninth Circuit has explained that it is would be "incongruous to preclude compensation for" preliminary and postliminary activities, "but require it for" mid-shift activities.  *Busk I*, 713 F.3d at 532.  Applying *Busk I*'s reasoning here—which was not vacated by the Supreme Court's subsequent decision—time spent checking in and out and waiting in line to do so is not compensable regardless of when it occurred during the workday.

Moreover, Amazon associates are not hired to "clock in" after meal periods.  A contrasting example is illustrative.  In *Peterson v. Nelnet Diversified Sols., LLC*, the court held that time spent waiting for a computer to turn on and software to bootup was "integral and indispensable" to the call center representatives' jobs.  15 F.4th 1033, 1041 (10th Cir. 2021).  The court reasoned "there is a clear connection between the computers and software programs and the work" the employees "are employed to perform—the [employees] make consistent use of the computer and its programs to perform their work," therefore "preparing those tools is integral to the [employee's] work."  *Id*.  The court expressly contrasted turning on a computer (an integral activity) with waiting in line to punch a clock (a non-integral activity).  *Id*.  Instead, waiting in line to clock in is more akin to "donning and doffing time" that the Seventh Circuit concluded was not a principal activity, even when it occurred during a meal period.  *Mitchell*, 745 F.3d at 841.  Because time clocks are not "integral tools" for which Amazon's associates are hired to employ, waiting in line to use those time clocks is not an integral and indispensable activity.

###### c.      Any Time Spent Clocking In After Meal Periods Was *De Minimis*

Finally, Plaintiffs fail to plausibly allege that the time spent waiting to clock in was not *de minimis*.  Plaintiffs allege it took "one to three minutes to que up at an Amazon punch clock" to "clock back in" after their meal periods.  Compl.  ¶ 29.  This comfortably falls within the range of "a few seconds or minutes" that is *de minimis* under federal law.  *Alvarez*, 339 F.3d at 903.  Because "[i]t is inconceivable that a 'substantial measure' of the [Amazon associates'] 'time and effort' is consumed in [waiting to clock in] during the lunch break," Plaintiffs are not entitled to

compensation for this time, even if it constituted work that is integral and indispensable to their principal activities. *Mitchell*, 745 F.3d at 841.

**B.     Plaintiffs' Nevada Law Claims Fail as a Matter of Law**

Plaintiffs' second and third claims—brought under Nevada law rather than the FLSA—are based largely on the same theories of liability that undergird the FLSA claim. Specifically, Plaintiffs allege that Amazon was required to compensate them for time spent in security screenings during meal periods, walking to and from breakrooms during meal periods, and waiting to clock back in at the end of meal periods. Compl. ¶¶ 57, 59. But with respect to their Nevada claims only, Plaintiffs also seek compensation for the time spent in security screenings at the end of their shifts. *Id.*

These claims all fail as a matter of law. Plaintiffs are not entitled to compensation for the time spent in security screening during meal periods, walking to and from secondary breakrooms, and waiting to clock back in at the end of meal periods because these activities are not "work" under the FLSA, and Nevada incorporates the federal definition of "work." And because Nevada law likewise incorporates the federal Portal-to-Portal Act, the postliminary exit screening is not "work" under Nevada law.

**1.     Nevada State Law Tracks the FLSA**

It is well established that Nevada law tracks the FLSA and that Nevada courts look to the FLSA to interpret similar provisions under Nevada law. This includes the definition of "work" under Nevada law. Because Nevada law tracks the FLSA's definition of "work," Plaintiffs are not entitled to compensation for security screening during meal periods, walking to and from secondary breakrooms, and waiting to clock back in at the end of meal periods. *See supra* 6–13.

When interpreting Nevada statutes, the Nevada Supreme Court "first look[s] to the plain language of the statute." *Salas v. Allstate Rent-A-Car, Inc.*, 14 P.3d 511, 513–14 (Nev. 2000). "Where the statutory language is ambiguous," the Nevada Supreme Court looks to legislative intent, "which may be ascertained by reference to the entire statutory scheme." *Id.* at 514. And where Nevada law adopts "a federal statute . . . a presumption arises that the legislature knew and intended to adopt the construction placed on the federal statute by federal courts" so long as "the

state and federal acts are substantially similar and the state statute does not reflect a contrary legislative intent." *Century Steel, Inc. v. Div. of Indus. Relations*, 137 P.3d 1155, 1158–59 (Nev. 2006).  Therefore, when interpreting state laws with analogous federal counterparts, Nevada courts look to federal law unless the statute statutory language is "materially different."  *Terry*, 336 P.3d at 955–56; *see Rivera*, 735 F.3d at 900–01.

Based on these principles, "the Nevada Supreme Court has previously looked to the FLSA when deciding state law wages claims."  *Sargent v. HG Staffing, LLC*, 2019 WL 1117905, at *4 (D. Nev. Mar. 8, 2019).  In *Csomos*, the Nevada Supreme Court noted that since at least 2005, "the Nevada Legislature intended to track federal law" and concluded that Nevada's overtime scheme "is consistent with federal law" based on "the legislative history."  *Csomos v. Venetian Casino Resort, LLC*, 2012 WL 642460, at *3 (Nev. Feb. 24, 2012).  In *Terry*, the Nevada Supreme Court adopted the federal "economic realities" test to guide Nevada courts in determining when an employment relationship exists under Nevada's minimum wages laws because the Nevada legislature had "not clearly signaled its intent that Nevada's minimum wage scheme should deviate from the federally set course."  336 P.3d at 958.

The Nevada Supreme Court has specifically looked to the FLSA when defining "work" under Nevada law.  *See Rite of Passage*, 2015 WL 9484735, at *1–2.  Nevada law defines "hours worked" as "all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee."  Nev. Admin. Code § 608.115(1).  But because Nevada law does "not define what constitutes 'work,'" the Nevada Supreme Court instructed Nevada courts to "turn to the federal courts' interpretation of hours worked under [the FLSA]."  *Rite of Passage*, 2015 WL 9484735, at *1–2.  The Sixth Circuit has likewise held that "it is appropriate to look to federal law for guidance" on "what constitutes 'work'" under Nevada law.  *In re Amazon.com, Inc.*, 905 F.3d 387, 399, 408–09 (6th Cir. 2018).  Similarly, at least one court in this district has implicitly recognized that compensable hours worked under Nevada law also excludes *de minimis* time, as with the FLSA.  *See Sargent*, 2019 WL 1117905, at *8–9.

Because Nevada's interpretation of "work" tracks the FLSA's definition of work, much of

Plaintiffs' state law claims fail.  Plaintiffs seek compensation for the time they spent in security screening during meal periods, walking to and from secondary breakrooms, and waiting to clock back in at the end of meal periods.  Compl. ¶¶ 57, 59.  Because those claims fail under the FLSA because they are not work or, at the very least, amount to *de minimis* time, they also fail under Nevada law.  *See supra* 6–13.

## 2.  Nevada State Law Incorporates the Portal-to-Portal Act

Plaintiffs also are not entitled to compensation for the time spent in postliminary exit screening because such time is not compensable under the federal Portal-to-Portal Act and the Nevada law incorporates the Portal-to-Portal Act.

Although no Nevada court has determined whether Nevada law incorporates the Portal-to-Portal Act, there are several reasons to believe that it does.  First, and as explained above, "the Nevada Supreme Court has previously looked to the FLSA when deciding state law wages claims." *Sargent*, 2019 WL 1117905, at *4.  Even where there may be some statutory differences—such as in *Terry* where the state and federal law differed on the definition of employer yet the Nevada Supreme Court still adopted a similar test for determining classification—Nevada courts do not depart from the FLSA unless the "Legislature has . . . clearly signaled its intent that Nevada . . . should deviate from" the FLSA.  *Terry*, 336 P.3d at 955, 958.  The Nevada Supreme Court may "part ways with the FLSA where the language of Nevada's statutes has so required," but only where the "language of the relevant statutes [is] entirely conflicting." *Id.* at 956 (citing *Dancer I-VII v. Golden Coin, Ltd.*, 176 P.3d 271, 274–75 (Nev. 2008)).  Other courts agree that Nevada law follows the FLSA so long as Nevada law "is not textually inconsistent with federal law." *Rivera*, 735 F.3d at 900–01; *see, e.g.*, *Johnson v. Pink Spot Vapors Inc.*, 2015 WL 433503, at *6 (D. Nev. Feb. 3, 2015) ("[T]he . . . analysis of plaintiffs' FLSA claims is also applicable to [the Nevada state law] claim."); *Roces v. Reno Hous. Auth.*, 300 F. Supp. 3d 1172, 1204 (D. Nev. 2018) (same).  Even though Nevada's labor laws do not contain a provision akin to 29 U.S.C. § 254(a) that excludes certain activities, including "preliminary" and "postliminary" activities, from the list of "compensable" activities, Nevada law does not entirely conflict with the Portal-to-Portal Act and this court should "look to [the] federal [Portal-to-Portal Act] standard for guidance." *Nye v.*

*Burberry Ltd.*, 2017 WL 1228408, at *2 (D. Nev. Apr. 2, 2017).

Second, conduct by both the Nevada legislature and various Nevada officials indicate that the Portal-to-Portal Act is incorporated into Nevada state law.  The Nevada Attorney General has concluded that "it is apparent that the [Nevada] Legislature intended to enact state overtime compensation law that was generally consistent with federal law on the same topic."  05-04 Op. Att'y Gen. 12, 24-25 (2005).  The Nevada Labor Commissioner also relies on federal regulations when they are not inconsistent with Nevada's laws.  *See, e.g.*, Office of the Lab. Comm'r, Advisory Op., June 21, 2013 (relying on FLSA regulations with respect to rounding because section 608.016 did not address it and "[f]or this office to take a different position would result in an additional burden on Nevada employers and deny them a practical and effective tool for calculating time worked that is available to all other employers throughout the country."); Office of the Lab. Comm'r, Advisory Op., December 22, 2016 (approving use of the federal fluctuating workweek method for determining overtime).

Third, the relevant Nevada state law provisions were passed several decades after the Portal-to-Portal Act took effect.  The Portal-to-Portal Act passed in 1947, *see* 29 U.S.C. § 251 *et seq.*, in response to the "flood of litigation" resulting from the passage of the FLSA.  *Busk*, 574 U.S. at 31–32.  Nevada courts will ignore federal law that "post-dates" or plainly contradicts Nevada law.  *Rite of Passage*, 2015 WL 9484735, at *2 (declining to consider "federal regulation [that] post-dates" the relevant Nevada law and that has no "parallel[]" Nevada statute or regulation).  But the two relevant Nevada statutes that define "work" (sections 608.018 and 608.016) under Nevada law took effect in the 1970s and 1980s.  Because "it is presumed in enacting a statute the legislature acts with full knowledge of existing statutes relating to the same subject," *City of Boulder v. Gen. Sales Drivers*, 101 Nev. 117, 118–19 (1985), Nevada's adoption of identical definitions of "work" as under the FLSA, as amended by the Portal-to-Portal Act, strongly indicates that Nevada law incorporates the Portal-to-Portal Act.

Citing the Sixth Circuit's divided decision *In re Amazon.com, Inc.*, 905 F.3d 387 (6th Cir. 2018), Plaintiffs suggest that Nevada law does not incorporate the Portal-to-Portal Act.  *See* Compl. ¶ 57.  The majority reached this conclusion because the Nevada legislature has not

"decide[d] to explicitly incorporate the Portal-to-Portal Act." *In re Amazon.com*, 905 F.3d at 404. This gets the analysis backwards. The default is to include the FLSA's provisions in Nevada law when Nevada law is silent, not the other way around. That is, the Nevada Supreme Court would conclude that Nevada law incorporates the Portal-to-Portal Act *unless* the provisions are materially different or there is another "clear[] signal[]" that the Nevada Legislature intended for Nevada law to "deviate from the federally set course." *Terry*, 336 P.3d at 955, 958. As the dissent in *In re Amazon.com* explained, "the Nevada Supreme Court 'has signaled its willingness to part ways with the FLSA where the language of Nevada's statutes has so required,'" but that is limited to instances where "there is a "substantive reason" to do so, and there is "no such reason here." 905 F.3d at 408 (Batchelder, J., dissenting in part) (quoting *Terry*, 336 P.3d at 956–57). Given that there is no reason to deviate from the FLSA and, indeed, the Nevada Supreme Court has indicated that the default is for Nevada law to track the FLSA, *see Csomos*, 2012 WL 642460, at *3, the Court should—like Judge Batchelder—conclude that Nevada law tracks the FLSA, including as to the Portal-to-Portal Act.

Because Nevada law incorporates the Portal-to-Portal Act, Plaintiffs are not entitled to compensation under Nevada law for the time spent in postliminary exit screening. The Portal-to-Portal Act "narrowed the coverage of the FLSA" by excluding certain "preliminary" and "postliminary" activities from the FLSA's compensation requirement. *Alvarez*, 546 U.S. at 27. In *Busk*, the Supreme Court reasoned that mandatory security screenings were not "integral and indispensable" to the "productive work that the employee is *employed* to perform," even if that activity is required. 574 U.S. at 36. Therefore, exit security screening is one type of "noncompensable postliminary activit[y]" under the Portal-to-Portal Act. *Id.* at 35. Plaintiffs do not, and cannot, allege that the same exit screening here was "integral and indispensable" to the work that they were employed to perform, and therefore time spent in exit screening is not compensable under Nevada law, warranting dismissal of Plaintiffs' state law claims.

**C.   The Court Should Alternatively Stay This Case**

Although this Court can, and should, dismiss the case in its entirety, it alternatively should stay this case under its inherent authority until the Nevada Supreme Court resolves the certified

question in *Malloy* of whether Nevada law incorporates the Portal-to-Portal Act.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Whether a court should exercise its broad discretion to stay a case depends on the balance of benefits and harms that may arise, including whether a stay will (i) contribute to the orderly course of justice by "simplifying . . . issues, proof, and questions of law," (ii) cause damage, or (iii) result in hardship on a party if it is not imposed.  *CMAX*, 300 F.2d at 268; *see also Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).  Each factor supports a stay here.

Staying this case will likely resolve potentially dispositive questions of law.  If the Nevada Supreme Court decides to resolve the certified question in *Malloy*, it will address a central question in this case:  whether Nevada law incorporates the Portal-to-Portal Act.  *See Malloy*, 2024 WL 3276274, at *3.  Plaintiffs' Nevada state law claims are premised in part on postliminary security screening, which is not compensable under the Portal-to-Portal Act.  *See Busk*, 574 U.S. at 35–36. Whether Nevada law incorporates the Portal-to-Portal Act, will therefore "at least simplif[y]" the Nevada state law claims.  *Underwood Partners*, 2017 WL 11865291, at *1 (staying case pending Supreme Court's resolution of two petitions for certiorari).  Because staying this case pending resolution of the certified question in *Malloy* "will permit the parties to present arguments and evidence in the context of complete and resolved precedent, and . . . allow [the court] to evaluate the claims in light of this legal authority," a stay simplifies these "proceedings and promote[s] the efficient use of the parties' and the court's resources."  *Id.*

A stay also will not cause any damage to the parties.  At best, Plaintiffs can argue that they may not recover damages as quickly if a stay is granted, but such "a delay in recovering potential monetary damages is not sufficient harm to warrant [denying] a stay."  *Liberty Surplus Ins. Corp. v. IMR Contractors Corp.*, 2009 WL 1010842, at *4 (N.D. Cal. Apr. 14, 2009).  And even if the parties may "have to wait longer for resolution of this case," there will be a similar delay if the parties were later required to submit "new briefing that may be necessitated if the [Nevada] Supreme Court" accepts the certified question and later decides whether Nevada law incorporates the Portal-to-Portal Act.  *Underwood Partners*, 2017 WL 11865291, at *2.

And any stay is likely to be "relatively brief," not "indefinite," further undermining any

1   claims of damage.  *Gong-Chun v. AETNA, Inc.*, 2010 WL 1980175, at *3 (E.D. Cal. May 17, 2010)

2   (staying wage-and-hour class action pending resolution of California Supreme Court case).  Judge

3   Traum has already ordered the Clerk of the Court to forward a copy of the Certification Order to

4   the Nevada Supreme Court, and the Nevada Supreme Court will now "consider whether to accept"

5   the certified question "without oral or written argument from the parties unless otherwise directed

6   by the [Nevada] Supreme Court."  Nevada R. App. Proc. 5(g)(1).

7       By contrast, the parties may face hardship absent a stay.  If the case is not stayed and

8   proceeds to discovery while awaiting the Nevada Supreme Court's decision, the parties may be

9   subjected to "conducting and responding to discovery that [later] is completely moot."  *Gong-*

10  *Chun*, 2010 WL 1980175, at *3.  Further, resolving Plaintiffs' state law claims "in this case before

11  the [Nevada] Supreme Court decides whether to" decide the certified question "could impose a

12  hardship on both parties" and the Court by imposing "unnecessary or premature briefing" on

13  whether Nevada law incorporates the Portal-to-Portal Act.  *Underwood Partners*, 2017 WL

14  11865291, at *2.

15      Although this Court can dismiss the entire complaint with prejudice, at a minimum the

16  Court should stay this case until the Nevada Supreme Court decides whether to accept the certified

17  question in *Malloy* and, if so, until the court resolves that question.

18                              **V.    CONCLUSION**

19      The Court should dismiss the complaint in its entirety with prejudice or, alternatively, stay

20  this case pending resolution of the certified question in *Malloy*.

21  / / /

22  / / /

23  / / /

24

25

26

27

28

Dated:  July 5, 2024

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP
BRADLEY J. HAMBURGER
MEGAN M. COONEY


By:  */s/ Megan M. Cooney[2]*
     Megan M. Cooney

Attorneys for Defendant
AMAZON.COM SERVICES LLC


Dated:  July 5, 2024

Respectfully submitted,

LITTLER MENDELSON, P.C.
MONTGOMERY Y. PAEK
AMY L. THOMPSON


By:  */s/ Montgomery Y. Paek*
     Montgomery Y. Paek

Attorneys for Defendant
AMAZON.COM SERVICES LLC

---

[2] Megan M. Cooney submitted a verified petition and has complied with LR IA 11-2.