BRADLEY J. HAMBURGER (*pro hac vice*)
MEGAN M. COONEY (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:  213.229.7000
Email:  bhamburger@gibsondunn.com
Email:  mcooney@gibsondunn.com

Montgomery Y. Paek, Esq.
Bar No. 10176
Amy L. Thompson, Esq.
Bar No. 11907
LITTLER MENDELSON, P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, Nevada 89169
Telephone:     702.862.8800
Fax No.:        702.862.8811
Email:  mpaek@littler.com
Email:  athompson@littler.com

Attorneys for Defendant
AMAZON.COM SERVICES LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| JASMINE SOLARES, ESTEFANIA CORREA RESTREPO, and STEVEN REID<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES LLC,<br><br>Defendants. | CASE NO. 2:24-CV-00881-EJY<br><br>**DEFENDANT AMAZON.COM SERVICES LLC'S OPPOSITION TO MOTION FOR CIRCULATION OF NOTICE OF THE PENDENCY OF THIS ACTION PURSUANT TO 29 U.S.C. § 216(B) AND FOR OTHER RELIEF**<br><br>**ORAL ARGUMENT REQUESTED** |

## I.     **INTRODUCTION**

Without waiting for a ruling on the sufficiency of their complaint, Plaintiffs have rushed to seek to conditional certification of a collective under the Fair Labor Standards Act ("FLSA") and permission to send notice of this action to potential members of the collective.  The Court should deny this motion as premature, particularly given that the FLSA claims alleged here—which are primarily focused on time spent walking through a security area during meal breaks—are foreclosed by U.S. Supreme Court and Ninth Circuit precedent, as confirmed in Defendant's pending motion to dismiss.  ECF No. 15 ("Mot. to Dismiss") at 8–13; *see also Buero v. Amazon.com Servs., Inc.*, 61 F.4th 1031, 1049 (9th Cir. 2023) (screening during meal periods is not work compensable under the FLSA); *Busk v. Integrity Staffing Sols., Inc.*, 713 F.3d 525, 532 (9th Cir. 2013) ("walking to the lunchroom" is not "a work duty" and is thus not compensable under the FLSA), *rev'd on other grounds*, 574 U.S. 27 (2014).  The Court should rule on that motion first, as it moots Plaintiffs' conditional certification motion and obviates any need to send notice of this lawsuit.  *See, e.g.*, *Dockery v. Citizens Telecom Servs. Co., LLC.*, 2023 WL 2752482, at *5 (E.D. Cal. Mar. 31, 2023) (denying plaintiff's conditional certification motion because the court granted a motion to dismiss the case); *Banks v. Robinson*, 2011 WL 3274049, at *6 (D. Nev. July 28, 2011) (denying conditional certification because motion to dismiss was pending).

Even if the Court were to entertain this premature motion, Plaintiffs have not met the standard for conditional certification.  Critically, they have not put forth any evidence establishing that they are "similarly situated" to the other Amazon employees to whom they wish to send notice. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018).  To the contrary, Plaintiffs' sole evidence are five self-serving, virtually identical declarations—three by Plaintiffs and two by other opt-ins—that do nothing to prove that they are similarly situated to all non-exempt employees at the LAS2 facility who worked at least 40 hours per week.  Presenting self-serving declarations that do not go beyond reciting one's personal experiences cannot justify conditional certification. *See, e.g.*, *Sarviss v. Gen Dynamics Info. Tech., Inc.*, 663 F. Supp. 2d 883, 905 (C.D. Cal. 2009) (denying motion for certification where plaintiff's declaration addressed only "his experience and that he observed other 'employees'" and did "not provide a single example aside

Gibson, Dunn &
Crutcher LLP
Attorneys at Law

from his own experience."); *Rivera v. Saul Chevrolet, Inc.*, 2017 WL 3267540, at *6 (N.D. Cal. July 31, 2017) (denying motion for conditional certification where the plaintiff did "not provide any evidence that any putative collective action member other than Plaintiff worked overtime and was not paid for it"). And Amazon's evidence, which contradicts the statements in Plaintiffs' cookie-cutter declarations, demonstrates a high degree of variability on the issues relevant here. The Court should not conditionally certify any collective and should not authorize notice of this action.

Plaintiffs also argue that the Court should toll the statute of limitations for putative collective members to opt in. But equitable tolling is extended "only sparingly" and Plaintiffs do not raise any arguments that justify its application here. *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990). There is nothing that prevents putative collective members from opting in or filing their own suit right now, as evidenced by the multiple opt-ins since this case was first filed.

Finally, Plaintiffs' proposed form and method of notice are procedurally and substantively defective. Plaintiffs unnecessarily propose a 120-day opt-in period that exceeds what most courts in this district allow. *See, e.g.*, *Dulan v. Jacob Transp. Servs.*, 172 F. Supp. 3d 1138, 1151 (D. Nev. 2016); *McDonagh v. Harrah's Las Vegas, Inc.*, 2014 WL 2742874, at *7 (D. Nev. June 17, 2014); *Gamble v. Boyd Gaming Corp.*, 2014 WL 2573899, at *5 (D. Nev. June 6, 2014); *Williams v. Trendwest Resorts, Inc.*, 2006 WL 3690686, at *2 (D. Nev. Dec. 7, 2006). They also propose three different methods of notice—email, first-class mail, and posting at LAS2—even though other courts regularly conclude that mail and email notice is more than sufficient. *See Gonzalez v. Diamond Resorts Int'l Mktg., Inc.*, 2019 WL 3430770, at *6 (D. Nev. July 29, 2019); *Davis v. Westgate Planet Hollywood Las Vegas, LLC*, 2009 WL 102735, at *3, *13 (D. Nev. Jan. 12, 2009). The proposed notice also fails to explain potential opt-ins' rights, options, and obligations, omits critical information including that recipients may pursue their own independent action, and includes grossly inaccurate information—for example, advising that failure to join the collective precludes all monetary recovery—all of which prevents informed decision-making about whether to participate.

/ / /

Plaintiffs' motion for conditional certification and notice is premature and should be denied.

## II.    BACKGROUND

Plaintiffs are current and former Amazon associates who, at one time, worked at Amazon's LAS2 Returns Facility in Las Vegas.  ECF No. 23 (First Am. Compl. ("FAC")) at ¶¶ 7, 9.  Plaintiffs allege that Amazon violated the FLSA because Amazon did not compensate them for three activities during their meal breaks.  First, they allege that if they wanted to take a meal break offsite or at one set of "external" breakrooms, they had to walk through security after clocking out and without pay, which would take up to "5 to 10 minutes."  *Id.* ¶¶ 23, 26.  Second, they allege that associates can walk "two to five minutes" from the time clocks to a set of "internal" breakrooms for their meal breaks without going through any screening.  *Id.* ¶ 25.  Third, Plaintiffs allege that they had to wait in a short line, without pay, to clock back in at the end of their meal breaks.  *Id.* ¶¶ 27, 29.  Because they allegedly were not paid for this compensable "work" under the FLSA, Plaintiffs claim Amazon failed to pay overtime wages under the FLSA.  *Id.* ¶¶ 49–50.  Plaintiffs also allege that the same activities, as well as end-of-shift security screening, is compensable under Nevada state law.  *Id.*¶¶ 53–65.

On July 5, 2024, Amazon filed a motion to dismiss or alternatively stay this case.[1]  As relevant here, Amazon argued that Plaintiffs cannot demonstrate that the time spent in any of the meal period-based activities is compensable under the FLSA.  Mot. to Dismiss 6–14.  Associates decide whether they want to take their breaks on site, thereby avoiding the security area, or off site, which requires going through the security area.  The Ninth Circuit recently held that such meal period screening is not compensable.  *See id.* at 6–11; *Buero*, 61 F.4th at 1049.  Plaintiffs also are not entitled to pay for the time spent walking to and from breakrooms because such time is not compensable under the Ninth Circuit's decision in *Busk*.  Mot. to Dismiss at 11–12; *see Busk*, 713 F.3d at 532.  Plaintiffs are not entitled to compensation for the time spent waiting to clock back in after lunch because this activity is not integral and indispensable to their job, and it

---

[1]  Although Plaintiffs later filed an amended complaint, the parties stipulated that the amended complaint did not moot the motion to dismiss because the complaints are materially identical.  ECF No. 24.

Gibson, Dunn &
Crutcher LLP
Attorneys at Law

would be "incongruous to preclude compensation" for clocking in at the start of a shift "but require it" for clocking in after a mid-shift meal break.  Mot. to Dismiss 12–13; *Busk*, 713 F.3d at 532. Finally, even assuming any of these activities qualified as compensable work, Plaintiffs acknowledge they take no longer than a few minutes, rendering any unpaid time *de minimis* within the meaning of the FLSA.  Mot. to Dismiss at 9–14.

On July 8, 2024, Plaintiffs filed their motion for conditional certification under the FLSA. ECF No. 17 ("Mot.").  Plaintiffs ask that the Court conditionally certify a class consisting of all current and former overtime-eligible associates at LAS2 based on the same theories of liability asserted in their complaint.  *See id*. at 5, 7.  Plaintiffs propose that notice be provided by email, first-class mail, and posting at LAS2.  *Id.* at 9–10.  Plaintiffs also request that the statute of limitations be tolled from June 5, 2024 (the date Amazon's responsive pleading was originally due) until some unstated end period.  *Id.* at 10–12.  The sole evidence submitted with Plaintiffs' motion are five near-identical declarations that describe the experiences of the specific named Plaintiffs or opt-ins.  Each declaration repeats verbatim the same conclusory allegations regarding the purported delays the declarants would experience when going through meal period security screenings, traveling to breakrooms, and clocking in at the end of meal periods.  Mot., Ex. B.  For example, each declarant states "[i]f we underwent the security check after clocking out for our 30 minute break period we would often experience a delay in our ability to begin our meal break . . . by approximately 5 to 10 minutes."  *See id.*  Similarly, each declarant recites in conclusory fashion that based upon their observations and conversations with other associates, "there were approximately 1000 people employed full time . . . by Amazon who also worked under the same policies and practices, regarding the need to spend uncompensated time undergoing security screenings, traveling to the secondary breakrooms, and waiting in line to punch back in from meal breaks."  *Id.*

Contrary to Plaintiffs' self-serving and cursory declarations, going through the security area is quick—associates who do not bring a bag with them walk straight through security and associates who choose to bring a bag with them (despite the ample availability of secure lockers in the facility) proceed through screening lines that take no longer than one minute.  Ex. A

Gibson, Dunn & Crutcher LLP
Attorneys at Law

("Cooley Decl.") ¶ 5; Ex. B ("Morris Statement") ¶ 11.  There are five lanes for security, and going through security has never taken some associates "more than one minute tops."  Cooley Decl. ¶ 4; Morris Statement ¶ 11.  There are also "a lot of time clocks to choose from," so it only takes associates "about five seconds to clock in."  Morris Statement ¶ 3; *see* Ex. C ("Ramirez Statement") ¶ 6.  At meal breaks, associates can leave the facility or go to one of four breakrooms, which provide sufficient seats for all associates on break at any given time.  Ex. D ("Fortner Decl.") ¶¶ 4–6, 8; Ramirez Statement ¶ 4.  Two of these breakrooms, which associates call the "secondary breakrooms," are internal and can be accessed without walking through the security area.   Fortner Decl. ¶ 4; Morris Statement ¶ 13.  The internal breakrooms have several time clocks located directly outside their entrance and can easily hold up to 400 total people at once.  Fortner Decl. ¶¶ 5, 7, 9.  The other two breakrooms, along with the facility exit, are located just a few feet beyond the security screening area.  *Id.* ¶ 4; *see* Morris Statement ¶¶ 4–5.  At the end of a meal break, associates clock back in before returning to their workstation.  Morris Statement ¶ 7; Ramirez Statement ¶ 6.  Although some associates may choose a time clock that one or two associates may also choose to use, and thus need to pause before clocking in, that time is *de minimis*—taking "only a few seconds" at most.  Morris Statement ¶ 7; Fortner Decl. ¶¶ 12, 14.

## III.    LEGAL STANDARD

The Ninth Circuit has adopted a "two-step approach" for "determining whether the [FLSA] collective mechanism is appropriate." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1108–10 (9th Cir. 2018).  In the first step, plaintiffs will "move for preliminary certification," which "refers to the dissemination of notice to putative collective members, conditioned on a preliminary determination that the collective as defined in the complaint satisfies the 'similarly situated' requirement of section 216(b)."  *Id.* at 1109.  The Ninth Circuit defines "similarly situated" as "alike with regard to some *material* aspect of their litigation," and "a collective can only be maintained . . . to the extent party plaintiffs are alike in ways that matter to the disposition of their FLSA claims." *Id.* at 1114.  "[W]hat matters is not just *any* similarity between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiffs' claims, in the sense of having the potential to advance these claims, collectively, to some resolution." *Id.* at 1115.

Gibson, Dunn &
Crutcher LLP
Attorneys at Law

The Court has "substantial judicial discretion" in determining whether a suit may be properly maintained as an FLSA collective action." *Id.* at 1110.  The burden is on Plaintiffs to provide "substantial allegations" that putative collective members are similarly situated, i.e., that they are "together the victims of a single decision, policy, or plan." *Suliaman v. Sw. Furniture Stores of Wisc., LLC*, 2016 WL 1411352, at *3 (D. Nev. Apr. 8, 2016).  Plaintiffs cannot satisfy their burden with "unsupported assertions of widespread violations." *Fetrow-Fix v. Harrah's Ent., Inc.*, 2011 WL 6938594, at *7 (D. Nev. Dec. 30, 2011).

## IV.   ARGUMENT

### A.   The Court Should Rule on Amazon's Motion to Dismiss Before Considering Distribution of Notice

As Amazon's pending motion to dismiss explains, Plaintiffs have not stated any viable FLSA claims.  *See* Mot. to Dismiss at 6–14.  Before proceeding to conditional certification and notice, the Court should instead resolve Amazon's pending motion and determine whether Plaintiffs' FLSA claims are legally sufficient.  Proceeding to conditional certification before the pleadings are settled would needlessly waste judicial and party resources.  That waste would be significantly increased if the Court were to grant the motion for conditional certification, as that would require the parties to prepare the collective list, engage an administrator, and distribute notice to potential collective members, all of which would be mooted by a subsequent ruling on the motion to dismiss.  That is why it is "judicially fair and efficient" to only order conditional certification if an FLSA claim survives Amazon's motion to dismiss.  *Babcock v. Butler Cnty.*, 2014 WL 688122, at *3 (W.D. Pa. Feb. 21, 2014), *aff'd*, 806 F.3d 153 (3d Cir. 2015); *see also Dockery*, 2023 WL 2752482, at *5 (granting motion to dismiss and then denying conditional certification motion).

Sending notice prior to ruling on Amazon's meritorious motion is particularly inappropriate here given the arguments in Amazon's motion to dismiss.  Amazon's motion to dismiss the FLSA claims is not premised on a mere challenge to the sufficiency of the allegations.  Rather, Amazon's motion asserts that Plaintiffs' theories are legally untenable and cannot be resolved through amendment to the complaint.  *See* Mot. to Dismiss at 6–14.  Amazon's motion, if granted, could thus result in a complete dismissal of the FLSA claims with prejudice.  It "makes

Gibson, Dunn &
Crutcher LLP
Attorneys at Law

little sense to allow conditional certification" while Amazon's claim-dispositive motion is pending because "there will be no collective action to certify" if the FLSA claims are dismissed. *Banks*, 2011 WL 3274049, at *6 (denying conditional certification due to pending motion to dismiss).

And given Plaintiffs' FLSA claims are premised on three distinct theories, even a partial dismissal of the FLSA claims could create a scenario where the collective may need to be redefined, and any notice amended, to address only the viable FLSA theories. Deferring resolution of this motion until the Court rules on the motion to dismiss would eliminate the potential of confusion for the putative collective and reduces the likelihood that opt-ins may not actually fall within the collective.

Courts faced with similarly premature motions for conditional certification have correctly denied or deferred ruling on such motions. *See, e.g.*, *Dockery*, 2023 WL 2752482, at *5 (denying plaintiff's conditional certification motion because the court dismissed the case and therefore "there [was] . . . no operative complaint in [the] action and . . . no complaint upon which to certify a class"). That is because "collective action allegations must survive Rule 12(b)(6) and state a claim for relief that is plausible on its face in order to move onto the conditional certification stage." *Clark v. Bank of Am., N.A.*, 2018 WL 2993529, at *3 (D. Nev. June 14, 2018); *see, e.g.*, *Clark v. Bank of Am., N.A.*, 2017 WL 3814665, at *1 & n.1 (D. Nev. Aug. 30, 2017) (denying motion for conditional certification as moot because court granted motion to dismiss); *Kennedy v. R.M.L.V., LLC*, 2013 WL 5278632, at *3 (D. Nev. Sept. 17, 2013) (finding "motion to conditionally certify" was premature). In *Banks*, for example, the court denied conditional certification because "it makes little sense to allow conditional certification . . . while [a] motion to dismiss [was] pending" because if the motion to dismiss is granted, "there will be no collective action to certify." 2011 WL 3274049, at *6.

Plaintiffs also cannot claim that any minor delay in ruling on their motion would prejudice them or the putative collective. As discussed below, members of the putative collective can continue to opt in or file their own individual claims. *See Gonzalez v. Fallanghina, LLC*, 2017 WL 1374582, at *5 (N.D. Cal. Apr. 17, 2017) ("Dismissal of the FLSA claim therefore will not hinder putative collective members' ability to file their own claims."); *Holder v. Bacus Foods*

*Corp.*, 2023 WL 5671406, at *3 (D. Ariz. Sept. 1, 2023) ("The Court is not swayed by Plaintiff's argument that deferring ruling on his [certification] Motion prejudices potential opt-in plaintiffs. As Defendants observe, any delay in court-approved notice does not affect these individuals' ability to prosecute their own lawsuits or intervene in this one.").  The fact that several individuals have opted in since Plaintiffs filed suit further suggests that there is no need to rush to issue notice to the putative collective while Amazon's motion to dismiss is pending.

> **B.    Plaintiffs Have Not Met Their Evidentiary Burden for Conditional Certification**

In addition to being premature, Plaintiffs' motion is also unsupported by the evidence necessary to satisfy their burden for conditional certification in the Ninth Circuit.  *Campbell*, 903 F.3d at 1109.  Plaintiffs must show that putative collective members are similarly situated, i.e., that they are "together the victims of a single decision, policy, or plan."  *Suliaman*, 2016 WL 1411352, at *3; *see also Combs v. Jennifer Convertibles*, 2010 WL 11575029, at *2 (N.D. Cal. Feb. 26, 2010).  Plaintiffs cannot satisfy their burden with "unsupported assertions of widespread violations."  *Fetrow-Fix*, 2011 WL 6938594, at *7; *see also Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 990 (C.D. Cal. 2006).  And Plaintiffs cannot proceed "if the action relates to other specific circumstances personal to the plaintiff rather than any generally applicable policy or practice."  *McDonagh*, 2014 WL 2742874, at *5; *see also Rivera*, 2017 WL 3267540, at *6 (denying conditional certification where plaintiff did not submit sufficient evidence that *other employees* worked more than 40 hours per week without overtime pay).  This requires providing some "factual basis beyond the mere averments in [the] complaint," *Litvinova v. City & County of San Francisco*, 2019 WL 1975438, at *5 (N.D. Cal. Jan. 3, 2019), such as evidence that other collective members were not appropriately compensated for overtime, or evidence of a "company wide [*sic*] policy to deny overtime compensation to those who are entitled to such compensation," *Bishop v. Petro-Chem. Transp., LLC*, 582 F. Supp. 2d 1290, 1296 (E.D. Cal. 2008).

Here, Plaintiffs assert that "[t]hey have alleged a set of common policies and practices by Amazon requiring them to regularly perform uncompensated overtime work during their meal break periods," and therefore have met their burden for conditional certification.  Mot. at 7–8.  In support of their position, Plaintiffs assert in conclusory fashion that Amazon failed to compensate

them for time spent going through meal period security screenings, traveling to breakrooms, and clocking in at the end of meal periods, and that Amazon's policies caused them to receive shorter meal periods. *Id.* at 5–6.  The only purported evidence Plaintiffs offer are five virtually identical and vague declarations, which fail to provide any specific examples beyond the declarants' generalized experiences or observations.  This is not enough to obtain conditional certification.  In fact, courts routinely reject bids for conditional certification where plaintiffs or putative collective members provide supporting declarations which do not go beyond merely reciting their own personal and individualized experiences.  For example, in *Sarviss*, the court denied the plaintiff's motion for conditional certification where his declaration addressed only "his experience and that he observed other 'employees.'"  663 F. Supp. 2d at 905–06.  The court held that the plaintiff's declaration did "not provide a *single* example aside from his own experience."  *Id.* at 905.  Similarly, in *Rivera*, the court denied conditional certification where the plaintiff did "not provide any evidence that any putative collective action member other than Plaintiff worked overtime and was not paid for it."  2017 WL 3267540, at *6; *see also Bishop v. Petro-Chemical Transport, LLC*, 582 F. Supp. 2d 1290, 1296 (E.D. Cal. 2008) (denying motion for conditional certification where the plaintiff's declaration stated that he was not paid overtime, but did not offer any evidence of other workers not being paid overtime); *Richie v. Blue Shield of Cal.*, 2014 WL 6982943, at *11 (N.D. Cal. Dec. 9, 2014) (denying motion for conditional certification where "outside of her own experience, Plaintiff has failed to introduce any evidence of another claims processor who failed to receive [overtime] compensation").

Plaintiffs' cookie-cutter declarations (one of which is unsigned, Mot., Ex. B., Declaration of Steven Reid) are identical in substance and repeat the same conclusory allegations regarding purported delays the declarants would experience when going through meal period security screenings, traveling to breakrooms, and clocking in at the end of meal periods.  Mot., Ex. B.  Notably, none of the declarations provides a single, specific example to support Plaintiffs' allegations.  Instead, each declaration simply relies on vague and generalized statements regarding their "and other Amazon workers" experience.  Mot., Ex. B.

/ / /

Gibson, Dunn & Crutcher LLP
Attorneys at Law

Plaintiffs have also failed to demonstrate that the putative collective members were "together the victims of a single decision, policy, or plan" that violated the FLSA. *McDonagh*, 2014 WL 2742874, at \*5. Their declarations do not make clear whether each declarant specifically opted to take their meal periods offsite (where they would go through a voluntary security screening), or in one of Amazon's internal breakrooms (avoiding screening altogether). Mot., Ex. B. Nor do the declarants point to any specific shared experience with the putative collective members aside from simply alleging in conclusory fashion that other employees (regardless of their exempt/non-exempt status) faced similar circumstances. *Id.* Plaintiffs' declarations thus do nothing to establish that Plaintiffs or any non-exempt putative collective member were required by Amazon to regularly perform uncompensated overtime work during their meal break periods.

By contrast, Amazon's evidence demonstrates a high degree of variability in whether putative collective members went through security screenings, or instead opted to forego them and take their meal periods in one of Amazon's breakrooms. At LAS2, there are a total of four breakrooms where associates can take their meal breaks if they do not want to exit the facility. Fortner Decl. ¶ 4. Two are "external breakrooms," which are located approximately 15 feet outside of the security area and require associates to pass through security to access them. *Id.*; Morris Statement ¶ 5. The external breakrooms have seats for approximately 150 and 200 employees, respectively. Fortner Decl. ¶ 5. Some associates opt to bring their lunch and eat it in one of the facility's two internal breakrooms, foregoing Amazon's security screening altogether. *Id.* ¶¶ 4, 6; Morris Statement ¶ 13. The internal breakrooms have seats for approximately 80 and 350 employees, respectively. Fortner Decl. ¶ 5. The internal breakrooms have multiple time clocks located directly outside the breakrooms, negating the need to spend time traveling from the time clocks to the internal breakrooms. *Id.* ¶¶ 9–10. Outside of size, there are no material differences between the internal and external breakrooms. *Id.* ¶ 5. They all sell food and beverages, have microwaves and refrigerators, and have areas for employees to store their lunches. *Id.*

/ / /

/ / /

Gibson, Dunn &
Crutcher LLP
Attorneys at Law

In addition, LAS2 intentionally staggers meal breaks so that only approximately 400 associates are on a meal break at any given time.  *Id.* ¶ 8.  Thus, even if every associate opted to stay on site for their meal breaks, there is adequate space for all associates on break at any given time to simultaneously eat lunch within LAS2's two internal breakrooms and without going through the screening area.  *Id.*

For associates who take their meal breaks in one of LAS2's two external breakrooms or off site, the screening process is of little concern.  *See* Morris Statement ¶¶ 4–5; Cooley Decl. ¶¶ 3–8; Ramirez Statement ¶¶ 4–5.  There are twelve timeclocks at the front of the facility, just ten feet from the exit screening area.  Fortner Decl. ¶ 9.  To conduct visual security, LAS2 has five exit walkways to leave the operational floor of the building and access the building exit.  Cooley Decl. ¶ 4; Morris Statement ¶ 11.  Each lane has a deactivated metal detector which are utilized as "randomizers," meaning they are programmed to randomly beep for every 3 out of 100 individuals who walk through them.  Cooley Decl. ¶¶ 4–5.  The 3% of individuals who trigger this randomized beep are asked to go through an operational metal detector approximately 10 feet away from the randomizer before exiting the building.  *Id.* ¶¶ 4–5, 8, 19; Ramirez Statement ¶¶ 9–10.  "This process is also very quick," taking no more than "one minute."  Ramirez Statement ¶ 11.  The 97% of individuals who do not trigger the randomizer can simply walk through without stopping and either exit the facility or go to the external breakrooms.  Cooley Decl. ¶ 6.

The screening process differs depending on whether an associate brings personal belongings to work.  LAS2 provides cubby holes at the front of the facility outside of the visual inspections area where associates can keep their personal items such as a lunch, cell phones, and car keys if associates do not leave these items in their cars.  *Id.* ¶ 16.  LAS2 also provides associates who do wish to enter the facility with personal items with clear bags to store their items in, to ensure that security personnel can quickly and easily look at their bags as they go through security to exit the facility.  *Id.*

Of the five security lanes, two are reserved for associates who choose to bring bags containing their personal items with them to work.  *Id.* ¶ 5; Ramirez Statement ¶ 5.  The remaining three lanes, referred to as "express lanes," are reserved for associates who do not bring personal

Gibson, Dunn &
Crutcher LLP
Attorneys at Law

1  items onto the work floor.  Cooley Decl. ¶ 5.  Because choosing to bring personal items onto the

2  work floor is a personal choice, associates have control over whether they will go through the

3  "express lanes" or standard lanes.  *Id.* ¶¶ 15–16.  For associates who bring a bag and use one of

4  the two standard lanes, it takes on average a few seconds for them to have their clear bag and

5  personal items checked by third-party security personnel.  *Id.* ¶¶ 5, 15; Morris Statement ¶¶ 10–

6  11; Ramirez Statement ¶¶ 4–5.  Even for some associates who always bring a bag to work, going

7  through security has only ever taken at most one minute.  Cooley Decl. ¶ 5; Morris Statement ¶ 11;

8  Ramirez Statement ¶¶ 4–5.  Many associates choose not to bring any personal items onto the work

9  floor.  Cooley Decl. ¶ 16.

10       Given this evidence, it is clear that there is no common way to adjudicate whether pay for

11  purported compensable time is owed to different associates for their time spent going through the

12  security area during their meal periods, traveling to breakrooms, and clocking in at the end of meal

13  periods.  An associate who brings a bag to work and always takes lunches offsite or in the external

14  breakrooms is situated differently than an associate who always takes meal breaks at one of the

15  internal break rooms.  And both are distinct from an associate who sometimes brings a bag and

16  sometimes takes a meal break offsite.  Even assuming Plaintiffs' claims are not foreclosed by U.S.

17  Supreme Court and Ninth Circuit precedent, *see* Motion to Dismiss at 8–13, assessing whether any

18  given associate is owed any allegedly unpaid overtime will require "individualized

19  determinations" regarding both whether the time is compensable under the FLSA and whether any

20  alleged off-the-clock work "falls within the *de minimis* exception to the FLSA."  *Hinojos v. Home*

21  *Depot, Inc.*, 2006 WL 3712944, at *3 (D. Nev. Dec. 1, 2006) (denying collective treatment).  This

22  variation is yet another reason conditional certification should be denied.

23       **C.       There Is No Justification for Tolling the Statute of Limitations**

24       Plaintiffs' request to toll the statute of limitations for putative collective members should

25  also be denied.  Plaintiffs seek tolling "for all 'opt in' plaintiffs for the time that has passed since

26  Amazon's answer was originally due on June 5, 2024."  Mot. at 10.  But as the Supreme Court has

27  instructed, equitable tolling should be extended "only sparingly."  *Irwin*, 498 U.S. at 96.  Equitable

28  tolling applies only when "the plaintiff is prevented from asserting a claim by wrongful conduct

on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999); *see Wallace v. Kato*, 549 U.S. 384, 396 (2007) ("Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs."). Thus, courts look to "whether it would be unfair or unjust to allow the statute of limitations to act as a bar to [Plaintiffs'] claims." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1004 (9th Cir. 2006).

Plaintiffs do not assert any basis for equitable tolling here. First, they do not argue that extraordinary circumstances beyond their control prevented the timely filing of claims, and likewise identify no wrongdoing by Amazon that prevented Plaintiffs from filing their claims earlier. Further, there is nothing preventing putative collective members from opting in or filing their own suit, which is evidenced by the multiple opt-in collective members Plaintiffs introduced with their Motion. In any event, several courts, including in this District, have concluded that determining whether the limitations period for potential opt-in plaintiffs should be equitably tolled at this stage amounts to "an advisory opinion" that should instead be "resolved at a later time if any actual opt-in plaintiffs seek such relief." *Lescinsky v. Clark Cnty. Sch. Dist.*, 539 F. Supp. 3d 1121, 1130 (D. Nev. 2021) (citing cases).

Instead, Plaintiffs sole argument is that because equitable tolling has been permitted in other cases, it should be here as well. Mot. at 10–11. But the cited decisions are distinguishable. In *McSwiggin v. Omni Limousine*, the defendant did not even challenge the plaintiffs' request to toll the statute of limitations. 2015 WL 4393868, at *4 (D. Nev. July 16, 2015). Here, Plaintiffs have not provided any evidence that it would be "unfair or unjust to allow the statute of limitations to act as a bar to [their] claims." *Huynh*, 465 F.3d at 1004.

In *Small v. University Medical Center of Southern Nevada*, 2013 WL 3043454, at *4 (D. Nev. June 14, 2013), the court granted equitable tolling because potential opt-ins could be unfairly prejudiced by the Court's delay in resolving the certification motion. But *Small* conflicts with binding Ninth Circuit authority, as the plaintiff there did not demonstrate that "extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." *Stoll*, 165 F.3d at 1242. Moreover, *Small* is contrary to more recent decisions that have deferred the issue of

Gibson, Dunn &
Crutcher LLP
Attorneys at Law

equitable tolling at this early stage of the proceedings.  *See, e.g.*, *Lescinsky*, 539 F. Supp. 3d at 1130.  In the final case, *Dualan v. Jacob Transportation Services, LLC*, the court adopted *Small*'s flawed reasoning even though it conflicts with binding Ninth Circuit authority, and found equitable tolling appropriate because the plaintiffs could be "unfairly prejudiced" where their "motion for conditional certification ha[d] been ripe but unresolved for more than six months."  172 F. Supp. 3d 1138, 1153–54 (D. Nev. 2016).  Here, Plaintiffs' motion was filed just one month ago and Plaintiffs have not suffered prejudice from any delay in resolving their motion.

The Court should not grant Plaintiffs the rare remedy of equitable tolling here.

**D.**     **The Proposed Notice Is Procedurally and Substantively Improper**

Even if this Court finds that certification of Plaintiffs' proposed collective is appropriate, Plaintiffs' proposed notice is improper.

**1.**     **A 120-day Opt-In Period Is Excessive**

A sixty-day opt-in period is sufficient to allow putative collective members to join the case, fosters the efficient resolution of the action, and is consistent with case law.  *See Labrie v. UPS Supply Chain Sols., Inc.*, 2009 WL 723599, at *8 (N.D. Cal. Mar. 18, 2009) (rejecting plaintiffs' request for 120 days in favor of 60-day timeline).  "Sixty days is sufficient time for a class member to receive the notice, ask any questions of Plaintiffs or their counsel, and make an informed choice as to whether or not they wish to participate."  *Delgado v. Ortho-McNeil, Inc.*, 2007 WL 2847238, at *4 (C.D. Cal. Aug. 7, 2007).

Citing a single case, Plaintiffs request an excessive 120-day opt-in period.  *See* Mot. 9–10 (citing *Cranney v. Carriage Servs., Inc.*, 2008 WL 608639 (D. Nev. Feb. 29, 2008)).  Putting aside that the defendants in *Cranney* did "not object[] to Plaintiffs' proposed notice," *Cranney*, 2008 WL 608639, at *5, courts in this district regularly order a much shorter time period.  *See, e.g.*, *McDonagh*, 2014 WL 2742874, at *7 (60 days); *Gamble*, 2014 WL 2573899, at *5 (same); *Williams*, 2006 WL 3690686, at *2 (same).  Courts have approved longer opt-in periods where, for example, potential membership in the collective is "exceedingly large and geographically diverse."  *Prentice v. Fund for Pub. Int. Rsch., Inc.*, 2007 WL 2729187, at *4 (N.D. Cal. Sept. 18, 2007); *see Cranney*, 2008 WL 608639, at *1 (potential collective includes employees from 170

15

1    different facilities across 27 states).  Here, the collective is limited to a single facility and a 120-

2    day period is excessive.[2]  If the Court authorizes notice, the opt-in period should be no more than

3    sixty days.

4                    **2.      Notice by Posting Is Unnecessary**

5          Although Plaintiffs do not clearly explain how notice should be disseminated, they appear

6    to raise three methods—first-class mail, email, and posting in LAS2.  *See* Mot. 9–10.  If the Court

7    orders notice, notice by first-class mail (at Plaintiffs' counsel's expense, as offered) and email are

8    sufficient and the Court should deny Plaintiffs' unjustified request to deliver notice by other means.

9          Plaintiffs have not shown or even suggested that notice by mail *and* email would be

10   ineffective, so notice by other means is redundant.  Mailing is "the preferred method for . . . notice"

11   and email is "an efficient and inexpensive method for providing notice" as well.  *Gonzalez*, 2019

12   WL 3430770, at *6 (citation omitted).  Courts regularly reject attempts to force defendant to post

13   notice at their facilities when notice is already provided "by mail and by email" and the plaintiffs

14   "have not demonstrated a need for" posting of notice.  *Id.*; *see, e.g.*, *Davis*, 2009 WL 102735, at

15   *3, *13 (denying, among other forms, plaintiffs' request for notice to be posted at defendants'

16   facility).  Posting notice also does not help broaden the reach of notice—defendants "have proper

17   addresses for their current employees" and "posting the notice in the workplace would not provide

18   notice to former employees for whom" defendants may lack current information.  *Phelps v. MC*

19   *Commc'ns, Inc.*, 2011 WL 3298414, at *6 (D. Nev. Aug. 1, 2011).  By requesting that Amazon

20   post the notice at LAS2, Plaintiffs are effectively asking Amazon to personally notify associates

21   of the lawsuit, which is improper because it is "likely to give the impression that the as-yet

22   unproven allegations against [Amazon] are true."  *Pittman v. Westgate Planet Hollywood Las*

23   *Vegas, LLC*, 2009 WL 10693400, at *10 (D. Nev. Sept. 1, 2009).

24         Moreover, the repetitive, cumulative nature of Plaintiffs' proposed notice methods

25   pressures recipients to join the lawsuit and implies that the Court endorses Plaintiffs' claims.  *See,*

26   *e.g.*, *Lutz v. Huntington Bancshares Inc.*, 2013 WL 1703361, at *7 (S.D. Ohio Apr. 19, 2013)

27   (denying request to post notice at work to avoid affirmatively encouraging participation).  "Court

28

---

[2] Although Plaintiffs request a 120-day notice period, their proposed notice states the opt-in period is 90 days.  *See* Mot., Ex. C at 3, 5.

Gibson, Dunn & Crutcher LLP
Attorneys at Law

intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims.  In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989).  To avoid the imprimatur of judicial endorsement, notice should be limited to mail and email.

### 3.    Plaintiffs Should Be Required to Use a Third-Party Administrator

Plaintiffs presume that notice distribution and opt-in receipt will be handled by their counsel, as requested in Plaintiffs' proposed notice.  *See* Mot., Ex. C at 3.  But "the best way to ensure the neutrality and integrity of the opt-in process" is to use a third-party administrator. *Prentice*, 2007 WL 2729187, at *5; *see Cooley v. Air Methods Corp.*, 2020 WL 9311858, at *4 (D. Ariz. Sept. 25, 2020).  The Court, if it is inclined to permit the sending of notice, should order that the parties meet and confer regarding the appointment of a mutually agreed upon notice administrator.[3]

### 4.    The Contents of the Proposed Notice and Consent Forms Are Improper

Under the standard outlined by the Supreme Court in *Hoffmann-La Roche*, if a court facilitates notice of a lawsuit it "must be scrupulous to respect judicial neutrality" and "must take care to avoid even the appearance of judicial endorsement of the merits of the action."   493 U.S. at 174.  "Notice has the purpose of providing potential plaintiffs with a neutral discussion of the nature of, and their rights in, the action."  *Helton v. Factor 5, Inc.*, 2012 WL 2428219, at *6 (N.D. Cal. June 26, 2012).

Plaintiffs' proposed notice is inaccurate in several ways, which prevents individuals from making an informed decision about whether to participate.  *See Hoffman-La Roche*, 493 U.S. at 170.  For example, the proposed notice warns that if individuals do not "join this lawsuit," they "will receive no money from this lawsuit."  Mot., Ex. C at 4.  This is not true.  Even if individuals do not opt in to the collective action, they may still be able to share in monetary recovery as a class member on the Nevada claims.  *See Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 469–70

---

[3] Plaintiffs, as the parties requesting notice, should bear all costs.  *See Bower v. Cycle Gear, Inc.*, 2015 WL 2198461, at *4 (N.D. Cal. May 11, 2015) (ordering plaintiffs to pay all costs and fees for mutually agreeable administrator).

Gibson, Dunn & Crutcher LLP
Attorneys at Law

(N.D. Cal. 2004).  Plaintiffs should not be permitted to pressure potential opt-ins into joining the collective by wielding factually incorrect information about their options to participate in this lawsuit.  Similarly, the notice repeatedly suggests that there is a "class."  *See, e.g.*, Mot., Ex. C at 3 ("Composition of the Class").  This, again, is false.  No class has been certified nor have Plaintiffs even sought class certification, and an FLSA collective action is *not* a class action.  *See Campbell*, 903 F.3d at 1105 (explaining that a "collective action . . . is not a comparable form of representative action" as a class action).

Plaintiffs' proposed notice also fails to adequately explain to putative collective members what their rights, options, and obligations are.  Numerous courts in the Ninth Circuit require that notices "adequately advise" the potential opt-in plaintiffs regarding the litigation.  *Sanchez v. Sephora USA, Inc.*, 2012 WL 2945753, at *7 (N.D. Cal. July 18, 2012).  This includes warning potential collective members that they "may share in liability for payment of costs if defendant prevails."  *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 541 (N.D. Cal. 2007); *see also Helton*, 2012 WL 2428219, at *6 (same).  Potential collective members therefore "should be made aware of the possibility of having to pay defendant's attorney's fees if plaintiffs do not prevail."  *Schiller v. Rite of Passage, Inc.*, 2014 WL 644565, at *6 (D. Ariz. Feb. 19, 2014); *see Labrie*, 2009 WL 723599, at *8; *Barrera v. U.S. Airways Grp., Inc.*, 2013 WL 4654567, at *9 (D. Ariz. Aug. 30, 2013) ("The Court also agrees with Defendant that the 'Legal Effects' section of the notice must be amended to advise potential opt-in plaintiffs that they may be liable for costs and attorney's fees if Defendant prevails.").

The proposed notice is also inadequate in its generic reference to the "contingency fee" agreement between Plaintiffs and their counsel.  Generic references to such agreements are insufficient.  Instead, the notice "must . . . include the percentage of the fee that plaintiffs agreed to pay their counsel and how that fee will be calculated."  *Gonzalez*, 2019 WL 3430770, at *4; *see Dualan*, 172 F. Supp. 3d at 1151.

/ / /

/ / /

/ / /

The notice likewise does not explain that opt-ins may be required to "appear for depositions," "respond to written discovery," or "testify at trial." *Aguilo v. Vails Gate Cleaners Inc.*, 2020 WL 3545558, at *8 (S.D.N.Y. June 30, 2020); *see Luque v. AT&T Corp.*, 2010 WL 4807088, at *7 (N.D. Cal. Nov. 19, 2010) (notice should include statement that opt-ins "might 'be required to provide information'"). Therefore, the notice does not provide potential opt-ins with information sufficient to "make informed decisions about whether to participate." *Adams*, 242 F.R.D. at 539.

Notice also cannot be approved given that it is incomplete. The notice references the "enclosed 'Consent To Join' form," Mot., Ex. C at 3, and Plaintiffs' motion contemplates that the consent form will be distributed via email and mail with the proposed notice. Yet Plaintiffs do not present a "Consent to Join" form for the Court's review and approval. Without an approved consent form, which Plaintiffs plainly intend to include with the proposed notice, there is a risk that any form sent by Plaintiffs would be invalid or inaccurate, and therefore notice cannot issue.

Plaintiffs' proposed notice also contains several discrepancies. For example, in one portion, the notice states that, by signing and returning the consent form, employees are agreeing that Plaintiffs' counsel are the employees' attorneys for this case "unless you indicate through a *separate filing* with the Court that you will be represented by another attorney or represent yourself." Mot., Ex. C at 3–4 (emphasis added). Elsewhere, the notice states that Plaintiffs' counsel will represent employees who send consent forms unless they "indicate *on the consent form*[] that [they] are being represented by other counsel." *Id.* at 5 (emphasis added). These discrepancies, further complicated by the fact that Plaintiffs do not submit a proposed consent form, *see supra* IV.D.4, serve to confuse potential opt-ins and require revisions.

/ / /

/ / /

/ / /

## V.   <u>CONCLUSION</u>

The Court should deny Plaintiffs' motion, either because it is premature or because conditional certification is unwarranted.

Dated: August 14, 2024

*/s/ Amy L. Thompson, Esq.*
MONTGOMERY Y. PAEK, ESQ.
AMY L. THOMPSON, ESQ.
LITTLER MENDELSON, P.C.

BRADLEY J. HAMBURGER, ESQ.
MEGAN COONEY, ESQ.
GIBSON DUNN

*Attorneys for Defendant*
AMAZON.COM SERVICES, LLC

Gibson, Dunn &
Crutcher LLP
Attorneys at Law

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 501 W. Broadway, Suite 900, San Diego, CA 92101-3577.  On August 14, 2024, I served the within document(s):

**DEFENDANT AMAZON.COM SERVICES LLC'S OPPOSITION TO MOTION FOR CIRCULATION OF NOTICE OF THE PENDENCY OF THIS ACTION PURSUANT TO 29 U.S.C. § 216(B) AND FOR OTHER RELIEF**

☒     By **CM/ECF Filing** – Pursuant to FRCP 5(b)(3) and LR 5-1, the above-referenced document was electronically filed and served upon the parties listed below through the Court's Case Management and Electronic Case Filing (CM/ECF) system:

| | |
|---|---|
| Leon Greenberg, Esq. | James P. Kemp, Esq |
| Ruthann Devereaux-Gonzales, Esq | Kemp & Kemp, Attorneys at Law |
| Leon Greenberg Professional Corporation | 7435 W. Azure Drive, Suite 110 |
| 2965 South Jones Blvd., Suite E3 | Las Vegas, NV, 89130 |
| Las Vegas, NV 89146 | jp@kemp-attorneys.com |
| leongreenberg@overtimelaw.com | |
| ranni@overtimelaw.com | Attorney for Plaintiff |

Attorneys for Plaintiff

I declare under penalty of perjury that the foregoing is true and correct.  Executed on August 14, 2024, at San Diego, CA.

*/s/ Erin J. Melwak*
Erin J. Melwak
Littler Mendelson