LEON GREENBERG, ESQ., SBN 8094
RUTHANN DEVEREAUX-GONZALEZ, ESQ., SBN 15904
Leon Greenberg Professional Corporation
1811 South Rainbow Blvd - Suite 210
Las Vegas, Nevada 89146
(702) 383-6085
(702) 385-1827(fax)
leongreenberg@overtimelaw.com
ranni@overtimelaw.com

JAMES P. KEMP, ESQ.
Nevada Bar No. 006375
KEMP & KEMP, ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110,
Las Vegas, NV  89130
(702) 258-1183/ (702) 258-6983 (fax)
jp@kemp-attorneys.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| JASMINE SOLARES, ESTEFANIA CORREA RESTREPO, and STEVEN REID<br><br>                                    Plaintiffs,<br><br>vs.<br><br>AMAZON COM SERVICES LLC<br><br>                                    Defendant. | Case No.:  2:24-CV-00881-EJY<br><br>**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CIRCULATION OF NOTICE OF THE PENDENCY OF THIS ACTION PURSUANT TO 29 U.S.C. § 216(b) AND FOR OTHER RELIEF** |

Pursuant to 29 U.S.C. § 216(b) the plaintiffs through their attorneys, Leon

Greenberg Professional Corporation and Kemp & Kemp, file this reply to defendant's opposition to their motion for an Order directing that other persons similarly situated to the plaintiffs be given notice of the pendency of this action and an opportunity to file written consents with this Court to join this action as party plaintiffs and for other associated relief including a toll of the statute of limitations otherwise applicable to such persons' claims.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **SUMMARY OF REPLY**

**While the parties dispute the factual circumstances, it is undisputed those circumstances involved *all* Amazon LAS2 <u>warehouse workers and the motion should accordingly be granted.</u>**

Defendant's opposition muddles the issues by arguing undisputed irrelevancies, such as the FLSA non-compensability of the plaintiffs' end-of-shift security screening time claims brought solely under Nevada law.   What defendant ultimately argues is that no FLSA notice of pendency should circulate because the plaintiffs have no meal break related FLSA claims and/or those claims are indisputably *de minimis* in nature.  It does so by submitting statements purporting to establish Amazon's operating procedures, applied to all LAS2 workers, render all such meal break related FLSA claims non-existent.   Alternatively, it argues if any such claims exist they will require too many "individualized determinations" and the motion should be denied on that basis.

As discussed, *infra,* plaintiffs dispute Amazon's factual representations about its operations at LAS2.   But they *concur* with Amazon that there were (and are) relevant common procedures imposed by Amazon on all LAS2 workers — common procedures that the plaintiffs allege cause meal break related FLSA violations.   Since the parties agree common procedures imposed by Amazon establish the existence (or non-existence) of meal break related FLSA claims for all LAS2 employees the motion should be granted.   Amazon's alternative argument, that such claims are too "individualized" for collective action treatment, is premature and irrelevant to the motion.   Once notice of pendency circulates, and the Court has before it a record of the "opt in" FLSA plaintiff claims at issue, Amazon can appropriately present that argument (for decertification or denial of final trial certification) to the Court.

## ARGUMENT

I.   **Plaintiffs allege a sufficiently detailed and supported set of common practices at the <u>LAS2 facility to have their motion granted.</u>**

While the parties dispute *what* practices Amazon imposed on LAS2 workers, they each allege practices that they claim were *common to all* of those workers. Plaintiffs have met the modest burden imposed upon them to set forth a sufficiently detailed set of allegations concerning common meal break related FLSA violations for many, most, or all of the LAS2 workers.

**A.**   **Plaintiffs have placed in the record detailed allegations of common policies by Amazon at the LAS2 facility causing FLSA violations; they also dispute Amazon's claims <u>its policies were different and did not violate the FLSA.</u>**

**1.**   **Plaintiffs allege Amazon violated the FLSA by requiring uncompensated "work" from <u>LAS2 employees during their meal breaks.</u>**

The sufficiency, as a matter of law, of plaintiffs' FLSA violation allegations are discussed in plaintiffs' opposition (Doc. 27) to defendant's pending motion to dismiss.   The common practices alleged to support the granting of this motion concern Amazon requiring "work" be performed by many, most, or all LAS2 employees during periods of time that were uncompensated by Amazon.   Plaintiffs allege the time they spent performing Meal Break Security Screenings, Secondary Breakroom Travel, and Meal Period End Ques was "work"[1] for which they were not compensated.   Succinctly stated, such allegations present two questions: Were such activities "work" and if they were "work" did Amazon compensate the employees for the time expended performing them?

The FLSA's definition of "work" is expansive and includes every activity, with limited exceptions, required of an employee by an employer.   It is the "…physical or mental exertion (whether burdensome or not) controlled or required

---

[1] These activities are described in the First Amended Complaint ("FAC"), Doc. 23, and the plaintiffs' declarations.   They respectively involve time spent in security screenings at the beginning of meal break periods, time spent traveling to certain break rooms, and time spent waiting in line to punch time clocks at the end of meal

by the employer and pursued necessarily and primarily for the benefit of the employer and his business.' " *Integrity Staffing Solutions, Inc. v. Busk,* 547 U.S. 27, 31, *citing and quoting Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 598 (1944). *See, also, Alvarez v. IBP, Inc.*, 339 F.3d 894, 902 (9th Cir. 2003), *affirmed IBP Inc. v. Alverez,* 546 U.S. 21 (2005), *citing and quoting Armour & Co. v. Wantock,* 323 U.S. 126, 133, (1944) "an employer ... may hire a man to do nothing, or to do nothing but wait for something to happen."

The parties do not dispute plaintiffs performed the alleged activities.   They dispute whether such activities were "work" — whether those activities were required by Amazon primarily for its benefit.  Amazon does not dispute that the plaintiffs were paid nothing for the time expended on such activities or any other activities during those meal break periods.

### 2. Plaintiffs' motion sufficiently alleged Amazon had a common policy of *requiring* LAS2 employees perform the alleged activities for Amazon's benefit.

It is undisputed Amazon had a common policy of requiring LAS2 employees take a 30 minute, uncompensated, meal break.   Amazon, if it did not require the LAS2 employees perform any "work" during that 30 minute period, and provided those employees with an adequate opportunity to eat a meal, did not have to compensate them for those 30 minutes. *See,* 29 CFR 785.19.   Plaintiffs allege

break periods.

Amazon's common policies required "work" from the LAS2 employees during

that 30 minute period because Amazon imposed the following policies upon those

employees for its benefit:

> (1)   Amazon did not allow the LAS2 employees to remain at their
>
> workstations for that 30 minute period.   They had to "clock out" and
>
> after doing so leave the working areas of the LAS2 building, meaning
>
> they then had to leave the building or walk to, and spend that break
>
> time in, one of the designated LAS2 breakrooms;[2]  and
>
> (2)   To comply with the Amazon policy in (1) after clocking out they had
>
> to spend a quantum of time, in excess of one minute and as
>
> much as five or ten minutes or more, traveling through an Amazon
>
> required security screening station or walking to a distant breakroom
>
> and/or in an end of meal period que to clock back in on an Amazon
>
> timeclock.[3]

Amazon does not dispute the first allegation, conceding it had a common

policy of requiring LAS2 employees to leave the LAS2 workplace areas during

their meal beaks.  But it insists it had no common policies for LAS2 employees

---

[2] FAC Doc. 23, ¶20.

[3] *Id.* ¶¶ 21-29.   These allegations are reiterated and further detailed in the five
submitted plaintiff declarations.  Motion, Doc. 17, Ex. "B."

that "required" any of the alleged uncompensated time expenditures.  It insists any

such time expenditures, not being required by Amazon, and being undertaken

voluntarily by the LAS2 employees for their own benefit, were not work.   It

supports such claims by insisting:

(a)    No "Meal Break Security Screening" work time exists because

LAS2 workers did not have to go through meal break security

screenings.  According to Amazon, sufficient breakroom

facilities ("internal breakrooms") could be accessed by LAS2

employees that did not require such a screening;  Fortner Dec.,

Doc. 26-5; and

(b)    No "Secondary Break Room Travel" work time exists because

LAS2 workers could use time clocks located immediately

outside of the internal breakrooms to clock out and in for their

meal break periods; *Id.* and

(c)    No "Meal Period End Que" work time exists because it only

takes a few seconds to use and access a time clock at the end of

the meal period to clock back in (though Amazon's proffered

proof of this fact does not purport to be authoritative).[4]

The Court will not determine the plaintiffs' motion by acting as a finder of fact and weighing the ultimate veracity of the parties' differing assertions.   As discussed in the motion, this Court will grant the requested notice of pendency circulation as long as the plaintiffs' reasonably detailed allegations, if true, would tend to establish a common policy violating the FLSA.  It is a lenient standard and the resulting collective action certification is not final and may be revised (decertified) after the notice of pendency is granted.  *See*, *Dualan v. Jacob Transportation Services, LLC,* 172 F. Supp. 3d 1138, 1444 (Dist. Nev. 2016). Plaintiffs have met that standard.

In support of their motion, plaintiffs provided much more than just bare-bones, undetailed, allegations of Amazon requiring they spend time in Meal Break Security Screenings, Secondary Break Room Travel, and Meal Break End Ques. They explain those time expenditures occurred because of *the common policies imposed by Amazon* on the LAS2 workers.   Those common policies[5] were:

---

4 The Fortner declaration only avers she has "never observed" or "never seen" anyone wait more than a "few seconds" to use a time clock.   Doc. 26-5, ¶¶ 12-13. The Ramirez Declaration avers "when I clock back in after lunch there is never a line at the time clocks."  Doc. 26-4, ¶ 6.   The Morris Declaration avers it only takes them "a few seconds" to clock in after their meal break "even if there are some people in front of me at the time clock."  Doc. 26-3  ¶ 7.

5  These are all alleged at, and confirmed and further detailed in, the FAC Doc. 23, ¶¶ 21-29 and the plaintiffs' declarations to the Motion, Doc. 17, Ex. "B."

(a)   Amazon's policy of requiring meal break security screenings for most LAS2 workers because the internal breakrooms, which did not require a security screening to access them, could not accommodate all of those workers; as a result, approximately 75% of those workers were required to undergo meal break security screenings to access other break rooms or leave the LAS2 facility;

(b)   Amazon's policy of requiring LAS2 workers using internal breakrooms to clock out, and in, for their meal periods on time clocks a distance away from those internal breakrooms, resulting in a requirement workers using those internal breakrooms spend between 2 and 5 minutes walking each way to and from those time clocks during their 30 minute meal break period;

(c)   Amazon's policy of imposing discipline on LAS2 employees who clock back in at the end of their meal break period even one minute after the end of that 30 minute period.   That policy, and the physical limitations of the time clocks Amazon provided, required LAS2 employees spend between one to three minutes at the end of

their 30 minute meal break period queuing up to ensure they would

access and use Amazon's time clocks as demanded by Amazon.

That Amazon, in its opposition to the motion, disputes the existence of the

common policies alleged by the plaintiffs provides no basis for the denial of the

motion.   The alleged common policies, if true, would result in common FLSA

violations sufficient to meet the standard under *Dualan* and the Court should grant

the motion.

### 3.   Plaintiffs' also dispute Amazon's allegations about its policies made in opposition to the motion.

The Court is not sitting as a fact-finder and is not charged with determining,

and should not attempt to determine, whether Amazon or the plaintiffs conflicting

assertions of fact are true.   Although unnecessary, the plaintiffs also contest the

additional "facts" asserted by Amazon in its opposition that it insists establish no

meal break related FLSA violations occurred:

(a)   Amazon's internal break rooms accessible without going through a

meal break security screening could not  accommodate the 400

persons at a time Amazon admits would be on a meal break (Doc. 26-

5, ¶8, Fortner Dec.).   They could accommodate no more than 250

such persons.  EX A, B, and C, ¶5;

(b)   While there was a single time clock located at each internal break

room, ostensibly made available for meal break period clocking in and out, Amazon made its use untenable for most LAS2 employees.   As a practical matter, LAS2 employees could *not* avoid performing uncompensated Secondary Breakroom Travel by using that internal breakroom time clock.   *Id*. at ¶6-8.   Amazon rigorously tracks the time all LAS2 workers spend "on the clock" but not engaged in productive activities. Spending five to ten minutes on the clock walking each way to and from the internal breakroom large enough to accommodate a significant number (200) of the LAS2 workers would be treated by Amazon as "time off task."   *Id*.   Accumulating such "time off task" would result in negative repercussions for the employee. *Id*.   That policy by Amazon rendered its claim LAS2 employees were free to use internal breakroom time clocks, and suffer no loss of meal break time through forced, uncompensated, Secondary Breakroom Travel, untrue.   *Id*.   Amazon had a common policy of tracking compensated "time off task," including time spent traveling to or from internal breakrooms, and negatively treating employees accruing the same.   *Id*.   Amazon, through that policy, coerced LAS2 employees into performing uncompensated Secondary Breakroom Travel and Meal Break Security Screenings.   *Id*.

(c)   Plaintiffs insist Amazon's claims there were no security screenings at LAS2 prior to March of 2022, and that security screenings since then do not involve actual metal detection scans but only a random 3% of employees, are untrue.   *Id*. at ¶2-3.   Plaintiffs also confirm Amazon did not provide any lockers to store valuables that could have assisted LAS2 workers in minimizing time spent on Meal Break Security Screenings (Amazon only alleged "cubby holes" were  provided).  *Id*. at ¶4.

**B.    Defendant misrepresents the precedents it cites, the <u>plaintiffs' allegations, and the relevant factual disputes.</u>**

As discussed, plaintiffs allege common policies by Amazon towards *all* LAS2 employees causing the FLSA overtime violations alleged.   Amazon, ignoring those allegations, blithely insists plaintiffs are only alleging individual concerns or circumstances and not any "common policy" citing cases such as *Sarviss v. Gen Dynamics Info. Tech., Inc.*, 663 F. Supp. 2d 883, 905 (C.D. Cal. 2009) and *Rivera v. Saul Chevrolet, Inc.*, 2017 WL 3267540 at p. 6 (N.D. Cal. 2017).   In such cases no allegations, such as personal observations or uniform company policies, were proffered indicating any "similarly situated" employees existed who sustained the FLSA violations claimed.   There was no allegation in *Rivera* "….that any other employee actually worked in excess of 40 hours per

week and was not paid the appropriate rate based on that overtime."  *Id.*  In *Sarviss* a substantial question existed whether other helicopter pilots were, like the plaintiff, incorrectly classified as exempt and denied overtime pay. *Id.*  While the plaintiff alleged such persons worked more than 40 hours week, he submitted no allegations or evidence that they "deserved but were not paid overtime."  *Id.*

As discussed, plaintiffs have alleged, in detail, policies by Amazon that required *all* LAS2 employees, not just themselves, to spend time performing meal break related work that was uncompensated.   As further alleged in the FAC, those other LAS2 employees were scheduled by Amazon to work 40 hours a week and as a result they should have been paid overtime wages, as required by the FLSA, for the time they spent performing that uncompensated work.  Doc. 23 ¶ 33.  They need not allege anything more for their motion to be granted.

Amazon also attempts to reframe the issue presented, by insisting the plaintiffs submitted declarations "…do not make clear whether each declarant specifically opted to take their meal periods offsite (where they would go through a voluntary security screening)…."  Doc 26, p. 11, l. 3-5.   As discussed, the plaintiffs allege the security screenings at issue were *not* "voluntary" but *mandatory* — a circumstance they shared with every other LAS2 employee.

Amazon asserts, citing *Hinojos v. Home Depot, Inc.,* 2006 WL 3712944 p. 3 (Dist. Nev. 2006), that the motion must also be denied because this case will

require too many "individualized determinations" regarding the plaintiffs' off-the-clock work claims.   Doc 26, p. 13, l. 20-22.  It offers no explanation for that assertion.  It is completely vapid and without any basis.

*Hinojos* denied a notice of pendency that was proposed to be sent to Home Depot employees regarding off-the-clock work allegations at "more than 1,800" stores. *Id.*   *Hinojos* found "…that resolution of plaintiffs' claims depends on the specific employment conditions in each store and department in which each class member worked…" rendering the proposed "…collective action treatment impractical and unmanageable."  2006 WL 3712944 at p. 3.  In this case the notice of pendency concerns a single Amazon warehouse, LAS2, and the policies at that location of which the plaintiffs have personal knowledge.  No basis exists, at least at this point in this case, to conclude a notice of pendency should be denied because too many individualized issues exist for this case to be appropriately resolved as an FLSA collective action.

## II.   Amazon's objections to the proposed form and manner of distribution of the notice of pendency are without merit.

Amazon interposes a host of objections to the proposed notice of pendency's form, its manner of distribution, and the proposed process for joinder of opt in plaintiffs.  All of those objections are without merit and made solely to burden the plaintiffs, and their counsel, and obstruct the efficient prosecution of the FLSA claims at issue.

14

**A.   Requiring plaintiffs to use, and pay for, a third-party administrator to send notice and receive consents <u>would unjustifiably burden plaintiffs and their counsel.</u>**

Citing two unpublished decisions from other districts, *Prentice v. Fund for Pub. Int. Rsch., Inc.*, 2007 WL 2729187, at *5 (N.D. Cal. Sept. 18, 2007) and *Cooley v. Air Methods Corp.*, 2020 WL 9311858, at *4 (D. Ariz. Sept. 25, 2020), Amazon insists plaintiffs (really plaintiffs' counsel) should be required to use, and pay for, a third-party administrator to distribute a notice of pendency and receive any opt in responses.  Doc. 26, p. 17, l. 6-13.   It asserts doing so will "ensure the neutrality and integrity of the opt-in process." *Id.*   While that conclusion was stated by *Prentice*, and also by *Cooley* which cited and relied upon *Prentice*, neither of those cases, nor Amazon, explains why that is necessary.   It just insists it is so —while ignoring such a requirement will impose additional costs, of some considerable thousands of dollars, upon plaintiffs.  Burdening plaintiffs' counsel in such a fashion, and rendering the prosecution of this case uneconomical, not ensuring "neutrality and integrity," is Amazon's true objective.

This Court has never required the use of a third-party administrator for an FLSA notice of pendency and *Prentice* and *Cooley* are anomalous, and unexplained, in imposing such a requirement.  Plaintiffs' counsel is well aware of their ethical obligations and will not overreach or communicate in any improper fashion (Amazon provides no evidence they will do so or have done so).   The

mailing of the notice of pendency, and the processing of opt ins, should be left to plaintiffs' counsel, who will assume the expense of doing so and may, or may not, secure the assistance of a third-party.

### B.   This Court has never granted requests for the sort of *in terrorem* "warnings" Amazon is asking be placed in the notice of pendency.

Amazon, to discourage participation in this case, seeks to place in the notice of pendency "warnings" to the putative opt in plaintiffs of their costs liability and potential litigation burdens.   Such "warnings" are not intended to properly advise those persons but to have an *in terrorem* effect and discourage their participation. This Court has never required such "warnings" in an FLSA notice of pendency and should reject Amazon's request for them in this case.

### 1.   No "costs liability" language is proper.

Amazon erroneously insists that "[n]umerous courts in the Ninth Circuit" have required a notice of pendency advise opt-in plaintiffs of a potential liability for a defendant's costs or attorney's fees.   Doc 26, p. 18, l. 8-20.   While a few courts, without elaboration or analysis, have directed such language be placed in an FLSA notice of pendency, those decisions are anomalous.   This Court has never done so and with good reason — there are no precedents holding any such liability exists in FLSA cases and it has repeatedly been held that Rule 23 class members do not have any such liability.  *See, Lamb v. United Security Life Co.*, 59 F.R.D.

44, 48 (S.D. Iowa 1973); *Van de Kamp v. Bank of America,* 204 Cal.App.3d 819, 869 (1988);  *Wright v. Schock,* 742 F.2d 541, 545 (9th Cir.1984) (Observing in *dicta* that class members are not subject to fee or costs obligations except to class counsel from a common fund when they benefit from the class litigation) and other cases.

The potential to chill FLSA case participation from low paid hourly workers concerned about a potential (and non-existent) "costs" liability is manifest. Amazon's request for such a "costs" warning should be denied.

### 2.   No "litigation burden" language is needed.

Putative FLSA "opt in" plaintiffs, by joining this case, should be afforded a presumptive understanding that they may have to do *something further* to continue with this case.   Individualized discovery is "rarely appropriate" in FLSA cases and "[i]ncluding a warning about possible discovery when that discovery is unlikely will serve no purpose other than deterring potential plaintiffs from joining the suit based on unfounded concerns about the hassle of discovery."  *Prentice*, 2007 WL 2729187 p. 5.   Such discovery and litigation burden warnings should not be required (though they are in the draft notice proffered).

### C.   The proposed 120 day time period for joinder and methods for distribution of notice are appropriate.

While Amazon may prefer to limit the joinder of FLSA claims in this case through a shorter "opt in" period, no sound reason exists to deny the proposed 120

day joinder period.  That period will not unduly delay the progress of this case as this Court "routinely" allows at least a 90 day such period.  *See, Lescinsky v. Clark County School District,* 539 F.Supp.2d 1121, 1130 (Dist. Nev. 2021).

Similarly, Amazon seeks to avoid posting a notice in its on-site breakrooms and avoid more effectively notifying potential opt-in plaintiffs of this case.  No measurable burden will be imposed upon Amazon if it is required to post such a notice.  Nor would requiring such a posting "pressure" anyone to join this case or indicate judicial approval of the plaintiffs' claims.  It would simply provide an additional means by which opt-in plaintiffs could be advised of this case and as a result might choose to exercise their rights under the FLSA, something that Amazon wants to avoid.

### D. Some small changes in language are appropriately made to the notice and a proposed consent form is provided.

Amazon requests certain language changes to the notice (some concern typographic errors by plaintiffs' counsel).   The notice should make clear a failure to "opt in" only potentially impacts FLSA claim recovery since state law Rule 23 class claims may proceed separately.   There is, at this point, no certified class in this case, and none should be referred to in the notice.

Plaintiffs' counsel have entered into contingency fee agreements with plaintiffs providing that any attorney's fee shall be determined by the Court and shall not be more than 33% of any amounts recovered.  The notice of pendency can

recite that information if the Court deems it appropriate though plaintiffs' counsel believes it is sufficient for the notice to just state any fee must be approved by the Court.

A proposed consent form (inadvertently omitted from the motion) is now provided at Ex. D.

### III.   The requested FLSA statute of limitations toll should <u>be granted as a matter of judicial efficiency and fairness.</u>

Amazon, in arguing against granting the proposed toll of the FLSA's statute of limitations for "opt in" consent filers, seeks to be rewarded for obstructing the progress of this case.  Such a toll would be limited and only relate to the time since the filing of the plaintiffs' motion.   Failing to grant that toll would not only reward Amazon for opposing that motion, and delaying the circulation of a notice of pendency, it would encourage a needless waste of judicial resources in *every* FLSA case.  Every defendant, no matter how specious or pointless their opposition, would always oppose an FLSA notice of pendency request to secure that delay and accompanying diminution of potential FLSA claims.   This Court would, in turn, be pointlessly burdened with ruling on such motions.

This Court has consistently granted the sort of FLSA notice of pendency related statute of limitations toll requested by the plaintiffs and should do so in this case as well.

**CONCLUSION**

For all the foregoing reasons, plaintiff's motion should be granted in its entirety together with such other further and different relief that the Court deems proper.

Dated: August 28, 2024                     Leon Greenberg Professional Corp.

                                           By: /S/ *Leon Greenberg*
                                           Leon Greenberg, Esq.
                                           1811 South Rainbow Boulevard #210
                                           Las Vegas, NV 89146
                                           (702) 383-6085
                                           leongreenberg@overtimelaw.com
                                           *Attorney for Plaintiffs*

**PROOF OF SERVICE**

I hereby certify that the above and foregoing was electronically filed using the Court's CM/ECF system on this 28th day of August 2024, which will send electronic notification of this filing to all counsel of record.

                                            */s/ Ruthann Devereaux-Gonzalez*
                                           Ruthann Devereaux-Gonzalez

## <u>INDEX OF EXHIBITS</u>

Ex. A:  Declaration of Estefania Correa                    5 pages

Ex. B:  Declarations of Jasmine Solares                   5 pages

Ex. C:  Declaration of Jamar Jacocks                      5 pages

Ex. D: Proposed Consent Form                              1 pages

# EXHIBIT "A"

LEON GREENBERG, ESQ., SBN 8094
RUTHANN DEVEREAUX-GONZALEZ, ESQ., SBN 15904
Leon Greenberg Professional Corporation
1811 South Rainbow Blvd - Suite 210
Las Vegas, Nevada 89146
(702) 383-6085
(702) 385-1827(fax)
leongreenberg@overtimelaw.com
ranni@overtimelaw.com

JAMES P. KEMP, ESQUIRE
Nevada Bar No. 006375
KEMP & KEMP, ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110,
Las Vegas, NV  89130
(702) 258-1183/ (702) 258-6983 (fax)
jp@kemp-attorneys.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

* * *

|  |  |  |
|---|---|---|
| JASMINE SOLARES and ESTEFANIA CORREA, | ) ) ) | Case No.:  2:24-cv-00881-EJY |
| Plaintiff, | ) ) ) | DECLARATION OF ESTEFANIA CORREA |
| vs. | ) ) ) |  |
| AMAZON COM SERVICES LLC., | ) ) ) |  |
| Defendants. | ) |  |

ESTEFANIA CORREA, hereby affirms, under penalty of perjury, that she has personal knowledge of the following statements:

1. I am one of the named plaintiffs in this lawsuit.  This declaration is submitted in support of Plaintiffs' Motion for Circulation of Notice of the Pendency of this Action Pursuant to

29 USC 216(b) and for Other Relief and in reply to certain allegations made by defendant in opposing that motion.

2.      Reggie Cooley states in his declaration at paragraph 9 that from March of 2020 through February of 2022 there were no security checks of Amazon employees when they left LAS2.   That is not true during the period of my employment at LAS2, from September of 2021 through July of 2023.  During that entire time all of the LAS2 workers and I were subjected to a security check (a passing through of the metal detector) every shift when we left the LAS2 facility or went to the main breakroom for our meal period.

3.      Reggie Cooley states in his declaration at paragraph 4 that the metal detection capabilities of the metal detectors employees must walk through to exit the warehouse have been deactivated and such metal detectors are programed as "randomizers" and set to beep 3% of the times an individual walks through them.  My experience working at LAS2 is not consistent with that assertion as I experienced a "beep" far more than 3% of the times I walked through those metal detectors.  In an average four-day work week I would have walked through those metal detectors a total of eight times, twice per day, once during my lunch break and once when I exited the warehouse at the end of my shift. During such a week I would, on average, trigger a "beep" going through that screening approximately three times. The security guard who after each such incident conducted a further secondary screening of me sometimes explained to me that beep was being triggered because I wore steel toe boots.

4.      Reggie Cooley states in his declaration at paragraph 16 that Amazon provides LAS2 employees with "cubby holes" to store items so those items do not need to be carried through the security screenings.  I am unaware of the existence of any such "cubby holes" when I worked at LAS2 (no one told me about them and I never saw them) and Amazon did not make available lockers (that could be locked) for employees to store valuable items in.

5.      Dona Fortner states in her declaration dated August 14, 2024, Doc. 26-5, at paragraph 9, that Amazon provides LAS2 employees with two time clocks directly in front of

each of two internal breakrooms that can be used for meal breaks without going through security and describes those breakrooms. When I was at Amazon, there was a small internal breakroom and a larger "open air" breakroom available for use without going through security. There was one time clock in front of each of those two internal breakrooms. While the open air break room was the larger of the two internal break rooms, it would have adequately accommodated fewer than 200 employees.  The smaller of the two internal breakrooms would have accommodated no more than 50 people at a time.  The smaller of the internal breakrooms was an approximate two to five minute long walk from the majority of the workstations.  The open air breakroom was located in a corner of the warehouse that was a significant distance from the majority of the workstations, it would take approximately five to ten minutes to walk from those workstations to the open air breakroom.

6.      I understand Amazon is representing to the Court it did not require LAS2 employees to go through meal break security screenings since it provided internal breakrooms accessible for use without those screenings.   That representation by Amazon is incorrect. Amazon's policy of tracking its employees' "on the clock" (paid time) activities required LAS2 employees, if they did not want to be disciplined by Amazon, and possibly lose their jobs, to, as a practical matter, either (a) clock out for meal breaks, and then consume significant unpaid meal break time going through a security screening; or (b) clock out (and in) from their meal break at the main time clock in/clock out location (at the security screening station) quite distant from the open air internal breakroom and then consume significant amounts of unpaid meal break time walking to and from that internal meal breakroom.   The other, smaller, internal breakroom was not an available option for most LAS2 employees because its capacity was very limited.

7.      Amazon would keep track of all the time a LAS2 employee was "on the clock" (being paid for that time) but *not* at their workstation performing work, such workstation absent time being called "time off task."  If I were to walk from my work station and clock out for my meal break on the time clock located at the entrance to the open air breakroom, I would be

subject to discipline for "time off task" for the five to ten minutes it would typically take to walk that significant distance and que up to use the single available time clock at that location.   After my 30 minute lunch break, if I were to clock back in at the time clock located at the entrance of the open air breakroom, then walk to my workstation, I would again be subject to discipline for time off task, because I clocked in but took five to ten minutes to walk to my work station.   If large numbers of workers attempted to use that break room and its time clock significant time would also be consumed queuing up to use the single time clock there.   Such queuing up would either deprive the employee of a significant portion of their 30 minute meal break or result in additional "time off task" being recorded against the employee.   That is because the Amazon time clocks scan employee badges and were often slow or would require multiple swipes to work.   When those clocks were working well often only three or four employees a minute could use them, meaning it could take ten minutes, or more, for 50 employees to all use the same single time clock.

8.      As I explain above, the choice presented to most Amazon LAS2 employees if they wanted to use the open air breakroom, which had the most capacity to accommodate them if they wished to avoid a meal break security screening, were highly undesirable.   They could use the time clock located at that break room and face discipline, and disfavor, by Amazon for recording "time off task."   Or they could use the time clock located near the security screening stations, avoid incurring that "time of task" record, but have to engage in a long walk (five to ten minutes each way) back and forth from that open air break room, and lose the use of a large portion, possibly the majority, of their meal break period.   As a result, it made more sense, since they experienced less loss of meal break time and no negative "time off task" record, for most LAS2 employees during their meal break to undergo a security screening and use one of the two main (past security screening) breakrooms or go outside the LAS2 facility entirely.   As a practical matter, Amazon did not allow LAS2 employees and I to enjoy and effectively use their full 30 minute unpaid meal break.   It either required we consume a significant portion of that

meal break period going through a security screening, walking to and from the distant open air breakroom, or face negative consequences with a "time off task" record if we avoided that security screening and such walking to and from the open air breakroom during our break time period.

I affirm I am over 21 years of age and I make this statement, which I have read and declare to be true, of my own free will.

_____                    _____

DATE                                            NAME

EXHIBIT "B"

LEON GREENBERG, ESQ., SBN 8094
RUTHANN DEVEREAUX-GONZALEZ, ESQ., SBN 15904
Leon Greenberg Professional Corporation
1811 South Rainbow Blvd - Suite 210
Las Vegas, Nevada 89146
(702) 383-6085
(702) 385-1827(fax)
leongreenberg@overtimelaw.com
ranni@overtimelaw.com

JAMES P. KEMP, ESQUIRE
Nevada Bar No. 006375
KEMP & KEMP, ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110,
Las Vegas, NV  89130
(702) 258-1183/ (702) 258-6983 (fax)
jp@kemp-attorneys.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JASMINE SOLARES and ESTEFANIA CORREA, | ) ) ) Case No.:  2:24-cv-00881-EJY |
| Plaintiff, | ) ) |
| vs. | ) DECLARATION OF JASMINE SOLARES ) |
| AMAZON COM SERVICES LLC., | ) ) ) |
| Defendants. | ) |

JASMINE SOLARES, hereby affirms, under penalty of perjury, that she has personal

knowledge of the following statements:

1.      I am one of the named plaintiffs in this lawsuit.  This declaration is submitted in

support of Plaintiffs' Motion for Circulation of Notice of the Pendency of this Action Pursuant to

29 USC 216(b) and for Other Relief and in reply to certain allegations made by defendant in opposing that motion.

2.      Reggie Cooley states in his declaration at paragraph 9 that from March of 2020 through February of 2022 there were no security checks of Amazon employees when they left LAS2.   That is not true during the period of my employment at LAS2, from July of 2020 through July of 2023.  During that entire time all of the LAS2 workers and I were subjected to a security check (a passing through of the metal detector) every shift when we left the LAS2 facility or went to the main breakroom for our meal period.

3.      Reggie Cooley states in his declaration at paragraph 4 that the metal detection capabilities of the metal detectors employees must walk through to exit the warehouse have been deactivated and such metal detectors are programed as "randomizers" and set to beep 3% of the times an individual walks through them.  My experience working at LAS2 is not consistent with that assertion as I experienced a "beep" far more than 3% of the times I walked through those metal detectors.

4.      Reggie Cooley states in his declaration at paragraph 16 that Amazon provides LAS2 employees with "cubby holes" to store items so those items do not need to be carried through the security screenings.  While Amazon may have provided cubby holes, those spaces were not secured.  Amazon did not make available lockers (that could be locked) for employees to store valuable items in.

5.      Dona Fortner states in her declaration dated August 14, 2024, Doc. 26-5, at paragraph 9, that Amazon provides LAS2 employees with two time clocks directly in front of each of two internal breakrooms that can be used for meal breaks without going through security and describes those breakrooms. When I was at Amazon, there was a small internal breakroom and a larger "open air" breakroom available for use without going through security. There was one time clock in front of each of those two internal breakrooms. While the open air break room was the larger of the two internal break rooms, it would have adequately accommodated fewer

2

than 200 employees.  The smaller of the two internal breakrooms would have accommodated no more than 50 people at a time.  The smaller of the internal breakrooms was an approximate two to five minute long walk from the majority of the workstations.  The open air breakroom was located in a corner of the warehouse that was a significant distance from the majority of the workstations, it would take approximately five to ten minutes to walk from those workstations to the open air breakroom.

6.   I understand Amazon is representing to the Court it did not require LAS2 employees to go through meal break security screenings since it provided internal breakrooms accessible for use without those screenings.   That representation by Amazon is incorrect.  Amazon's policy of tracking its employees' "on the clock" (paid time) activities required LAS2 employees, if they did not want to be disciplined by Amazon, and possibly lose their jobs, to, as a practical matter, either (a) clock out for meal breaks, and then consume significant unpaid meal break time going through a security screening; or (b) clock out (and in) from their meal break at the main time clock in/clock out location (at the security screening station) quite distant from the open air internal breakroom and then consume significant amounts of unpaid meal break time walking to and from that internal meal breakroom.   The other, smaller, internal breakroom was not an available option for most LAS2 employees because its capacity was very limited.

7.   Amazon would keep track of all the time a LAS2 employee was "on the clock" (being paid for that time) but *not* at their workstation performing work, such workstation absent time being called "time off task."  If I were to walk from my work station and clock out for my meal break on the time clock located at the entrance to the open air breakroom, I would be subject to discipline for "time off task" for the five to ten minutes it would typically take to walk that significant distance and que up to use the single available time clock at that location.  After my 30 minute lunch break, if I were to clock back in at the time clock located at the entrance of the open air breakroom, then walk to my workstation, I would again be subject to discipline for time off task, because I clocked in but took five to ten minutes to walk to my work station.   If

3

large numbers of workers attempted to use that break room and its time clock significant time would also be consumed queuing up to use the single time clock there.  Such queuing up would either deprive the employee of a significant portion of their 30 minute meal break or result in additional "time off task" being recorded against the employee.  That is because the Amazon time clocks scan employee badges and were often slow or would require multiple swipes to work.  When those clocks were working well often only three or four employees a minute could use them, meaning it could take ten minutes, or more, for 50 employees to all use the same single time clock.

        8.      As I explain above, the choice presented to most Amazon LAS2 employees if they wanted to use the open air breakroom, which had the most capacity to accommodate them if they wished to avoid a meal break security screening, were highly undesirable.   They could use the time clock located at that break room and face discipline, and disfavor, by Amazon for recording "time off task."   Or they could use the time clock located near the security screening stations, avoid incurring that "time of task" record, but have to engage in a long walk (five to ten minutes each way) back and forth from that open air break room, and lose the use of a large portion, possibly the majority, of their meal break period.   As a result, it made more sense, since they experienced less loss of meal break time and no negative "time off task" record, for most LAS2 employees during their meal break to undergo a security screening and use one of the two main (past security screening) breakrooms or go outside the LAS2 facility entirely.  As a practical matter, Amazon did not allow LAS2 employees and I to enjoy and effectively use their full 30 minute unpaid meal break.  It either required we consume a significant portion of that meal break period going through a security screening, walking to and from the distant open air breakroom, or face negative consequences with a "time off task" record if we avoided that security screening and such walking to and from the open air breakroom during our break time period.

I affirm I am over 21 years of age and I make this statement, which I have read and declare to be true, of my own free will.

_____                                    _____
DATE                                                    NAME

EXHIBIT "C"

LEON GREENBERG, ESQ., SBN 8094
RUTHANN DEVEREAUX-GONZALEZ, ESQ., SBN 15904
Leon Greenberg Professional Corporation
1811 South Rainbow Blvd - Suite 210
Las Vegas, Nevada 89146
(702) 383-6085
(702) 385-1827(fax)
leongreenberg@overtimelaw.com
ranni@overtimelaw.com

JAMES P. KEMP, ESQUIRE
Nevada Bar No. 006375
KEMP & KEMP, ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110,
Las Vegas, NV  89130
(702) 258-1183/ (702) 258-6983 (fax)
jp@kemp-attorneys.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JASMINE SOLARES and ESTEFANIA CORREA,<br><br>                           Plaintiff,<br><br>vs.<br><br>AMAZON COM SERVICES LLC.,<br><br>                           Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.: 2:24-cv-00881-EJY

DECLARATION OF JAMAR JACOCKS

JAMAR JACOCKS, hereby affirms, under penalty of perjury, that he has personal knowledge of the following statements:

1.     I am one of the plaintiffs in this lawsuit, having filed a consent to join this lawsuit as a plaintiff on May 24, 2024, with the Court.  This declaration is submitted in support of Plaintiffs' Motion for Circulation of Notice of the Pendency of this Action Pursuant to 29 USC

1    216(b) and for Other Relief and in reply to certain allegations made by defendant in opposing

2    that motion.

3        2.      Reggie Cooley states in his declaration at paragraph 9 that from March of 2020

4    through February of 2022 there were no security checks of Amazon employees when they left

5    LAS2.   That is not true during the period of my employment at LAS2, from April of 2018 until

6    May of 2022.   During that entire time all of the LAS2 workers and I were subjected to a security

7    check (a passing through of the metal detector) every shift when we left the LAS2 facility or

8    went to the main breakroom for our meal period.

9        3.      Reggie Cooley states in his declaration at paragraph 4 that the metal detection

10   capabilities of the metal detectors employees must walk through to exit the warehouse have been

11   deactivated and such metal detectors are programed as "randomizers" and set to beep 3% of the

12   times an individual walks through them.   My experience working at LAS2 is not consistent with

13   that assertion as I experienced a "beep" far more than 3% of the times I walked through those

14   metal detectors.   In an average four-day work week I would have walked through those metal

15   detectors a total of eight times, twice per day, once during my lunch break and once when I

16   exited the warehouse at the end of my shift. During such a week I would, on average, trigger a

17   "beep" going through that screening approximately four times. The security guard who after each

18   such incident conducted a further secondary screening of me sometimes explained to me that

19   beep was being triggered because I wore steel toe boots.

20

21       4.      Reggie Cooley states in his declaration at paragraph 16 that Amazon provides

22   LAS2 employees with "cubby holes" to store items so those items do not need to be carried

23   through the security screenings.   Amazon did not make available secure cubbies or lockers (that

24   could be locked) for employees to store valuable items in.

25       5.      Dona Fortner states in her declaration dated August 14, 2024, Doc. 26-5, at

26   paragraph 9, that Amazon provides LAS2 employees with two time clocks directly in front of

27   each of two internal breakrooms that can be used for meal breaks without going through security

28

1   and describes those breakrooms. When I was at Amazon, there was a small internal breakroom

2   and a larger "open air" breakroom available for use without going through security. There was

3   one time clock in front of each of those two internal breakrooms. While the open air break room

4   was the larger of the two internal break rooms, it would have adequately accommodated fewer

5   than 200 employees.  The smaller of the two internal breakrooms would have accommodated no

6   more than 50 people at a time.  The smaller of the internal breakrooms was an approximate two

7   to five minute long walk from the majority of the workstations.  The open air breakroom was

8   located in a corner of the warehouse that was a significant distance from the majority of the

9   workstations, it would take approximately five to ten minutes to walk from those workstations to

10   the open air breakroom.

11        6.    I understand Amazon is representing to the Court it did not require LAS2

12   employees to go through meal break security screenings since it provided internal breakrooms

13   accessible for use without those screenings.  That representation by Amazon is incorrect.

14   Amazon's policy of tracking its employees' "on the clock" (paid time) activities required LAS2

15   employees, if they did not want to be disciplined by Amazon, and possibly lose their jobs, to, as

16   a practical matter, either (a) clock out for meal breaks, and then consume significant unpaid meal

17   break time going through a security screening; or (b) clock out (and in) from their meal break at

18   the main time clock in/clock out location (at the security screening station) quite distant from the

19   open air internal breakroom and then consume significant amounts of unpaid meal break time

20   walking to and from that internal meal breakroom.  The other, smaller, internal breakroom was

21   not an available option for most LAS2 employees because its capacity was very limited.

22

23        7.    Amazon would keep track of all the time a LAS2 employee was "on the clock"

24   (being paid for that time) but *not* at their workstation performing work, such workstation absent

25   time being called "time off task."  If I were to walk from my work station and clock out for my

26   meal break on the time clock located at the entrance to the open air breakroom, I would be

27   subject to discipline for "time off task" for the five to ten minutes it would typically take to walk

28

1   that significant distance and que up to use the single available time clock at that location. After

2   my 30 minute lunch break, if I were to clock back in at the time clock located at the entrance of

3   the open air breakroom, then walk to my workstation, I would again be subject to discipline for

4   time off task, because I clocked in but took five to ten minutes to walk to my work station. If

5   large numbers of workers attempted to use that break room and its time clock significant time

6   would also be consumed queuing up to use the single time clock there. Such queuing up would

7   either deprive the employee of a significant portion of their 30 minute meal break or result in

8   additional "time off task" being recorded against the employee. That is because the Amazon

9   time clocks scan employee badges and were often slow or would require multiple swipes to

10  work. When those clocks were working well often only three or four employees a minute could

11  use them, meaning it could take ten minutes, or more, for 50 employees to all use the same single

12  time clock.

13          8.      As I explain above, the choice presented to most Amazon LAS2 employees if

14  they wanted to use the open air breakroom, which had the most capacity to accommodate them if

15  they wished to avoid a meal break security screening, were highly undesirable. They could use

16  the time clock located at that break room and face discipline, and disfavor, by Amazon for

17  recording "time off task." Or they could use the time clock located near the security screening

18  stations, avoid incurring that "time of task" record, but have to engage in a long walk (five to ten

19  minutes each way) back and forth from that open air break room, and lose the use of a large

20  portion, possibly the majority, of their meal break period. As a result, it made more sense, since

21  they experienced less loss of meal break time and no negative "time off task" record, for most

22  LAS2 employees during their meal break to undergo a security screening and use one of the two

23  main (past security screening) breakrooms or go outside the LAS2 facility entirely. As a

24  practical matter, Amazon did not allow LAS2 employees and I to enjoy and effectively use their

25  full 30 minute unpaid meal break. It either required we consume a significant portion of that

26  meal break period going through a security screening, walking to and from the distant open air

27

28

4

breakroom, or face negative consequences with a "time off task" record if we avoided that security screening and such walking to and from the open air breakroom during our break time period.

I affirm I am over 21 years of age and I make this statement, which I have read and declare to be true, of my own free will.

8/26/24

DATE

Jamar Jacocks

5

EXHIBIT "D"

CONSENT TO JOIN PURSUANT TO 29 U.S.C. §216(b)

JASMINE SOLARES et al plaintiffs vs. AMAZON COM SERVICES LLC defendants

Case No.: 2:24-CV-00881-EJY (D. Nev.)

TO: THE CLERK OF COURT AND TO EACH PARTY AND COUNSEL OF RECORD

    I reside at

_____

              (Street and include any Apartment Number)

_____   \_\_\_\_\_   _____

       (City)           (State)       (Zip Code)

    My home telephone number is: _____

    My current email address (if any) is: _____

    I understand that a lawsuit has been brought under the Federal Fair Labor Standards Act.  I have read and I understand the notice accompanying this consent.  I agree to be bound by any judgment of this Court in this lawsuit.

    Unless I have indicated to the Court by a subsequent filing, I understand that I will be represented by Leon Greenberg, Esq., Ruthann Devereaux-Gonzalez, Esq., and J.P. Kemp, Esq. and that this Court has retained jurisdiction to determine the reasonableness of any settlement and of any attorneys' fees and costs that are to be paid to the plaintiffs' counsel, should plaintiffs prevail.

_____

    (Signature)

_____

    (Print Name)

FOR THIS FORM TO BE EFFECTIVE IT MUST BE FULLY FILLED OUT, SIGNED, AND RETURNED BY (120 days after date of dispatch):

Leon Greenberg Esq.
1811 S. Rainbow Blvd., Suite 210
Las Vegas, NV   89146