UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JASMINE SOLARES, ESTEFANIA CORREA RESTREPO, and STEVEN REID,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM SERVICES, LLC,<br><br>Defendant. | Case No. 2:24-cv-00881-EJY<br><br>**ORDER** |

**I.     Summary of Decision**

Pending before the Court is Defendant Amazon.com Services, LLC's Motion to Dismiss and/or Stay the Case.[1] ECF No. 15. The Court considered the Motion, Response (ECF No. 27), and Reply (ECF No. 29). Based on the United States Supreme Court decision in *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27 (2014) (hereinafter "*Integrity I*"), the Motion is granted as to Plaintiffs' claims arising under the Fair Labor Standards Act (the "FLSA"). The Motion to Dismiss is denied without prejudice as to Plaintiffs' claim arising under Nevada's wage hour statutes given the Nevada Supreme Court's Order Accepting Certified Question in *Malloy v. Amazon.com Services, LLC*, Case No. 89314 (Nev. Oct. 24, 2024).[2] By accepting the certified question, the NSC agreed to decide whether the Portal-to-Portal Act (sometimes the "PPA") is incorporated into Nevada's wage hour statutory scheme. And, because the NSC's decision on this issue of law will substantially impact Plaintiffs' claims alleging violations of Nevada Revised Statutes, the Court stays proceedings on these claims, Finally, because no cause of action is proceeding under the FLSA, Plaintiffs' Motion for Circulation of Notice of the Pendency of this Action Pursuant to 29 U.S.C. § 216(b) and for Other Relief (ECF No. 17) is denied as moot. Defendant Amazon's Motion to Strike (ECF No. 33) is also denied as moot.

---

[1]    Amazon.com Services, LLC is referred to herein as "Amazon" or "Defendant."
[2]    The Nevada Supreme Court is sometimes referred to herein as the "NSC."

1

**II.     The Integrity Staffing Cases**

Plaintiffs' claims arising under the FLSA in the instant Complaint are reasonably related to and were substantially analyzed in *Integrity I* under the Portal-to-Portal Act. *Integrity I*, 574 U.S. at 37. After discussing the history leading to the adoption of the PPA (29 U.S.C. § 251 *et seq.*), the Supreme Court found security screenings required by Amazon at the end of shift were "noncompensable postliminary activities." *Integrity I*, 574 U.S. at 35. The Portal-to-Portal Act exempts employers from liability for wages arising from time spent in "(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities, which are preliminary or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. …." *Id.* at 32-33 codified at 29 U.S.C. § 254(a).

Considering the impact of PPA on issues then-presented, the Supreme Court stated "the term principal activity or activities'" has been consistently interpreted "to embrace all activities which are an integral and indispensable part of the principal activities." *Id*. at 33 *citing IBP, Inc. v. Alvarez*, 546 U.S. 21, 29-30 (2005) (further citations, internal quotation marks, and brackets omitted).[3] The Court further confirmed "integral means belonging to or making up an integral whole; constituent, component; specifically necessary to the completeness or integrity of the whole," and when applied to "describe a duty, indispensable means a duty that cannot be dispensed with, remitted, set aside, disregarded, or neglected." *Id*. (internal quote marks, brackets, and citations omitted). The *Integrity I* Court then held that "[a]n activity is therefore integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id*. These findings led the Supreme Court to conclude: "The security screenings at issue here are noncompensable postliminary activities. … [T]he screenings were not the principal activity or activities which the employee is employed to perform." *Id*. at 35 (internal citation and quote marks omitted). "Integrity Staffing did not employ its workers to undergo security screenings, but to retrieve products from

---

[3]     Hereinafter, the Court refers to the Supreme Court decision in *IBP v. Alvarez* as "*IBP Inc.*"

warehouse shelves and package those products for shipment to Amazon customers." *Id*. The *Integrity I* Court further stated that "security screenings also were not 'integral and indispensable' to the employees' duties as warehouse workers. … The screenings were not an intrinsic element of retrieving products from warehouse shelves or packaging them for shipment." *Id*. The decision made clear that "[i]f the [integral and indispensable] test could be satisfied merely by the fact that an employer *required* an activity, it would sweep into principal activities the very activities that the Portal-to-Portal Act was designed to address." *Id*. at 36 (emphasis added). "A test that turns on whether the activity is for the benefit of the employer is similarly overbroad." *Id*.

The Court finds the Sixth Circuit's decision in *In re: Amazon.com, Inc., Fulfillment Center Fair Labor Standards Act and Wage and Hour Litigation v. Integrity Staffing Solutions, Inc.*, 905 F.3d 387 (6th Cir. 2018), *petition for rehearing denied*, *cert. denied.*, --U.S.--, 140 S.Ct. 112 (2019) (hereinafter "*Integrity II*"), inapplicable to this Court's FLSA decision. *Integrity II* analyzed and addressed Nevada (and Arizona) wage hour law. *Id*. That certiorari was denied, given the issues presented were ones concerning state law, is not a persuasive fact for this Court. As discussed more fully below, the findings in *Integrity II* regarding how Nevada law differs from federal wage hour law are not persuasive when considering Plaintiffs' FLSA claim.

### III.  Issue Preclusion

Plaintiffs argue the *Integrity II* decision establishes issue preclusion as a bar to Defendant's ability to litigate the instant FLSA claims in this Court. Under federal law, issue preclusion applies when: (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom issue preclusion is asserted was a party or in privity with a party at the first proceeding. *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000). Further, the U.S. Supreme Court holds that with respect to an offensive assertion of issue preclusion (when issue preclusion is asserted by a plaintiff), the better approach is "to grant trial courts broad discretion to determine when it should be applied." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 (1979). Moreover, "[t]he general rule should be that in cases where a plaintiff could easily have

joined in the earlier action or … for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive" issue preclusion. *Id*.

The court in *Integrity II* did not decide issues under the FLSA, but Nevada law. 905 F.3d at 408 (reversing "the district court's judgment with regard to the Nevada claims in part and REMAND[ING] for further proceedings ….") (emphasis in original). While the Sixth Circuit concluded waiting in line and going through security screenings seems to fit the definition of "work" under the FLSA, the Court analyzed Nevada's statutory wage hour scheme not the FLSA. *Id*. at 399. Specifically, the Sixth Circuit considered whether Nevada would apply the Portal-to-Portal Act when deciding if Nevada based plaintiffs stated claims for unpaid wages under Nevada statutory law. *Id*. at 402-404. The Sixth Circuit concluded Nevada would not adopt the PPA, distinguishing the case from the holding in *Integrity I*, and thereafter found the FLSA workweek rule inapplicable to Nevada wage hour law. *Id*. at 406-07.

The court in *Integrity II* did not decide whether going through security checks after clocking out at the start of a meal break, travel time spent after the security screening, or waiting in line to clock back in at the conclusion of a meal break was compensable *under the FLSA*. This Court is deciding whether Plaintiffs state a claim under the FLSA, not Nevada law. The issues in *Integrity II* and this case are not identical or substantially similar given that the Sixth Circuit found the PPA and federal workweek did not apply to Nevada law. Further, as stated above, there was no final judgment on the merits in *Integrity II*, but a remand for further proceedings. *Integrity II*, 905 F.3d at 408. Based on the summary above, the Court finds issue preclusion does not bar Amazon's right to defend this case.

**IV.    Legal Standard for Motion to Dismiss**

While Amazon does not expressly state it is moving to dismiss Plaintiffs' First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6), Defendant does argue Plaintiffs fail to allege plausible claims for relief and otherwise fail to state claims as a matter of law. Thus, the Court analyzes Defendant's Motion under the 12(b)(6) standard.

Under Rule 12(b)(6), a defendant may move to dismiss a complaint or cause of action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of whether a plaintiff states a claim, the Court accepts allegation of material fact appearing in the complaint as true and construes the pleadings in the light most favorable to the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Dismissal may be "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).

**V.    Plaintiffs' Meal Break Claims Alleging a Violation of the FLSA**

   A.    <u>Summary of Plaintiffs' Claims</u>.

There is no dispute that Amazon required Plaintiffs to leave their workstations to take a 30 minute meal break and "be absent from such workstations and the working areas of the … building" (collectively the "Building Working Areas" or "BWA") in approximately the middle of each shift worked. ECF No. 23 ¶ 20. All employees clock out at the commencement of their meal breaks; however, because Amazon allegedly fails to provide adequate space to take meal breaks within the Building Working Areas, "approximately 75%" of employees must exit the BWA to take their meal breaks. *Id*. ¶ 23. The employees who leave the Building Working Area must go through a security screening and then walk some distance before eating their meals. *Id*. If employees take their meal breaks within the Building Working Area, no security screening is required. *Id*. Plaintiffs say waiting in the security screening lines causes at least a five to ten minute delay in starting their meal period after they clock out. *Id*. ¶ 26.

Plaintiffs further allege that at the conclusion of their meal period they report to a different workstation than the one to which they were assigned before the meal period. *Id*. ¶ 27. Plaintiffs are required to clock back in at the end of their meal period and alleged they must do so less than one minute past the 30 minute meal period ends or be subject to reprimand. *Id*. ¶ 28. Plaintiffs

conclude that time spent in security screenings to exit the Building Working Area and commence their meal break, travel time to areas to take meal breaks after security screenings, and time spent in queues waiting to clock back in at the end of meal periods is "working time for purposes of the FLSA, at least as not limited by the Portal-to-Portal Act …." *Id*. ¶¶ 20, 21, 23, 25, 28, 30.[4] All of this time, Plaintiffs say, which accrues while they are relieved of all work duties, is compensable under the FLSA and not excluded under the Portal-to-Portal Act or applicable case law. *Id*. ¶¶ 20, 48. Plaintiffs also say all this time is solely for the benefit of Amazon. *Id*. ¶ 31. Plaintiffs further aver that "[d]uring certain or most or possibly all days the Plaintiffs … worked … their entire [m]eal [p]eriod … was compensable … because [Amazon] provided … less than 30 minutes, and sometimes less than 20 minutes, … in which they were freed of all duties by Amazon and able to … use that time as they desired." *Id*. ¶ 49.

Plaintiffs rely on *Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003), *affirmed by IBP Inc.*, *supra*, 546 U.S. 21, which analyzes the Portal-to-Portal Act as applied to preliminary and postliminary activities and predates the Supreme Court decision in *Integrity I* rejecting "employer required activity" as the standard for determining whether such activity is compensable under the FLSA. ECF No. 27 at 10-11.[5] Plaintiffs nonetheless reiterates their theory that *all* time spent

---

[4] After reading Plaintiffs' FAC and Opposition to Amazon's Motion to Dismiss, the Court believes Plaintiffs are not seeking compensation for time spent traveling to a new workstation after the conclusion of their meal period. The FAC appears to indicate, but does not state, this travel time occurs after Plaintiffs clock back in. *See* ECF No. 23 ¶¶ 25-27, 29-30. Further, the FAC does not appear to seek compensation for this travel time because "Secondary Breakroom Travel," one of Plaintiffs' numerous defined terms, is defined in the following relevant partial sentence: "It would take the Plaintiffs and those similarly situated if they used a Secondary Breakroom and by doing so avoided a Meal Period Security Screening approximately two to five minutes (their 'Secondary Breakroom Travel') after they punched out on the Amazon timeclock system and began their Meal Period to directly walk to a Secondary Breakroom and utilize their Meal Period …." *Id*. ¶ 25. This definition does not refer to time spent walking to a new workstation.

Under the Portal-to-Portal Act, time spent walking to and from "the actual place of performance of … principal activities" is not compensable. 29 U.S.C. § 254(a). This portion of the PPA is not limited to preliminary or postliminary activities. *Id*. Thus, if Plaintiffs are suggesting walking time spent getting to a new workstation after a meal break is compensable under the FLSA, the Court rejects this claim. Indeed, the Court found no support for this contention in case law, regulation, or statute.

[5] The Ninth Circuit decision also discussed Washington State wage hour law holding that if a meal period is interrupted by a work task, then the meal period is compensable in its entirety. *Alvarez*, 339 F.3d at 913-14. The court also stated "[t]hat … activity is 'work' as a threshold matter does not mean without more that the activity is necessarily compensable." *Id*. at 902. The court discussed the Portal-to-Portal Act and stated "integral and indispensable … activity "must be necessary to the principal work performed and done for the benefit of the employer." *Id*. at 903 (internal quote marks and citations omitted). Under *Integrity I*, security screenings were not necessary to principal activities and were, thus, noncompensable. 546 U.S. at 35. Amazon "did not employ its workers to under security screenings" and such screenings "were not an intrinsic element of retrieving products from warehouse shelves …." *Id*.

"required" by the employer spent during a noncompensable meal period is indisputably compensable time. *Id*. at 10. Plaintiffs further argue, despite reliance on *Alvarez*, that the reasoning in *Integrity I* cannot be applied to this case precisely because *Integrity I* involved end of day activity—thus implicating the Portal-to-Portal Act—while the meal breaks occur during a "continuous" work day (neither preliminary nor postliminary) rendering the PPA inapplicable.

Plaintiffs also argue that because Amazon "requires" employees to leave the work area, this case is distinguishable from all those on which Amazon relies. ECF No. 27 at 3-5. Plaintiffs cite *Integrity II* saying the Sixth Circuit "found" security screening related to meal period breaks was work time. ECF No. 27 at 7. The court in *dicta*, while analyzing Nevada law, stated "mandatory security screenings clearly seems to fit the federal definition of 'work'" under the FLSA. *Integrity II*, 905 F.3d at 399. Plaintiffs return to their argument that the PPA applies only to pre and postliminary work, and is not applicable to "mandatory meal break security screenings …."[6] ECF No. 27 at 8. Plaintiffs also argue "that 'work' performed during otherwise non-compensable meal break periods must … be compensated" unless *de minimis*. *Id*. at 9-10.

B.   Analysis of Plaintiffs' Claims.

In this case there is no dispute that Plaintiffs are relieved of all work they were hired to perform when they clock out for their meal period. In fact, there is no dispute Plaintiffs were removed from the Building Working Areas such that they could perform no work during their meal period. Also in this case there is no allegation that Plaintiffs' meal periods were interrupted by employer requests that employees engage in work related activities immediately after or intermittently after the start of their 30 minute meal breaks.[7] There is no dispute that all employees clock out at the beginning of their meal period and clock back in at the end of their meal period. There is no dispute that some employees remain in breakrooms within the Building Working Areas

---

[6] Plaintiffs also cite to *Thomas v. Amazon.com Services, Inc.*, 462 F.Supp.3d 828 (N.D. Ohio, 2020), a decision interpreting Ohio wage hour law, that, in turn, applied *Integrity II* binding on that district court.

[7] *See Kohlheim v. Glynn County Georgia*, 915 F.2d 1473, 1477 (11th Cir. 1990) ("[T]he essential consideration in determining whether a meal period is a bona fide meal period or a compensable rest period is whether the employees are in fact relieved from work for the purpose of eating a regularly scheduled meal."); *see also Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 64-65 (2d Cir. 1997) (holding meal periods compensable "work" under FLSA if employees perform duties predominantly for the benefit of the employer); *Henson v. Pulaski County Sheriff Dep't*, 6 F.3d 531, 534–35 (8th Cir. 1993) (same).

for their meal periods and do not go through security screening. The issue before the Court is therefore limited to whether Plaintiffs state FLSA claims for unpaid wages and overtime for themselves and other employees allegedly required to: (1) leave the Building Work Areas to take meal breaks because of inadequate space for such breaks within the BWA, and thus go through screening after clocking out but before they commence eating; and (2) walk longer distances than those who remain in the BWA before getting to a location where they eat. Plaintiffs also seek compensation for themselves and others who are allegedly "forced" to spend "one to three minutes" queueing (waiting in line) to clock back in at the end of their meal period "because Amazon provided too few punch clocks for them to punch back in at that 30 minute interval reliably and without delay." ECF No. 23 ¶ 29.

                1.        *Security Screening.*

The Supreme Court's discussion and holding in *IBP Inc.*, reviewing the outcome of the Ninth Circuit's decision on which Plaintiffs rely, involved the applicability of the Portal-to-Portal Act to preliminary and postliminary activities, not mid-shift meal periods. *IBP Inc.*, 546 U.S. at 32 (identifying the issues before the Supreme Court). More specifically, the underlying Ninth Circuit decision considered, *inter alia*, whether under the Portal-to-Portal Act and state law time spent donning and doffing specialized protective gear was an integral and indispensable part of principal activities and therefore commenced the compensable workday. *Alvarez*, 339 F.3d at 902-04. The Ninth Circuit also considered whether time spent walking immediately after donning—uninterrupted by a meal break—was compensable. *Id*. at 906-07. At the Supreme Court, the employer did not challenge the Ninth Circuit's finding that donning and doffing of unique protective gear was a "principal activities under … the Portal-to-Portal Act" and was therefore compensable. *IBP, Inc.*, 546 U.S. at 32. Thus, the only question decided by the Supreme Court was whether time spent walking immediately *after* employees engaged in an integral and indispensable activity of donning gear—that is, without a noncompensable break—was compensable. *Id*. at 33-34. In the course of its decision, the *IBP, Inc.* Court noted that it is erroneous to conclude time spent "walking is always excluded by § 4(a) [of the Portal-to-Poral Act] just as … [is the] view that … walking is never

excluded." *Id*. at 37. The Court held that, under the circumstances, walking time that immediately followed employees' "first principal activity" was covered by the FLSA. *Id*.

Plaintiffs appears to depend on contradictory arguments. On the one hand, Plaintiffs rely on reasoning in the *IBP* cases that analyzed the Portal-to-Portal Act, and on the other hand argue the Court cannot rely on the reasoning in *Integrity I* to consider issues presented in this case because *Integrity I* applied the Portal-to-Portal Act to its finding that time spent in postliminary security screenings was not compensable. *Id*. at 6-7. Plaintiffs vigorously argue that the Portal-to-Portal Act necessarily applies only to activities preliminary to the first principal activity of a work day and postliminary to activities after the last principal activity of the work day and, therefore, reasoning used when applying the PPA cannot, as a matter of law, be properly applied to whether an employee who is completely relieved of work sometime in the middle of a day for a meal period is engaged in compensable time.

Plaintiffs' arguments ignore that *IBP, Inc.* held time spent walking *immediately after a principal activity* was compensable while waiting time spent to don protective gear *before engaging in a principal activity* was "certainly not 'integral and indispensable' to a 'principal activity" and not compensable. *IBP, Inc.*, 546 U.S. at 40. Here, Plaintiffs engage in waiting and screening (non-integral and indispensable activities) after being relieved of all principal activities; that is, removed from their workstations and working areas of the building. Plaintiffs also do not address *IBP Inc.*'s reminder that time spent walking from a timeclock near a factory gate to a workstation, while "certainly necessary for employees to begin their work" was "not compensable under the FLSA." *Id*. at 41. Plaintiffs' ignore Department of Labor regulation stating "[b]ona fide meal periods are not worktime" so long as an employee is "completely relieved from duty" (29 C.F.R. § 785.19) and succinctly stated case law holding "all of the time worked during a continuous workday is compensable, *save for bona fide meal breaks*." *Hart v. Rick's Cabaret International Inc.*, 60 F. Supp. 3d 447, 475 n.15 (S.D.N.Y. 2014) (citing *IBP*, 546 U.S. at 37) (emphasis added).

Despite alleging no facts stating Plaintiffs engage in any of their principal work activities at any time after they clock out for their meal breaks such that an application of the "continuous" work day rule would apply, Plaintiffs argue that even though the Supreme Court stated employees are not

9

engaged in compensable work activities under the FLSA when they wait for and go through *required* screening at the end of shift before they can leave the employer's building, screening *required* before an employee leaves the Building Work Area to eat their meals is compensable work time because the meal break occurs in the middle of the day rather than at the end. ECF No. 27 at 7.

Plaintiffs takes issue with the Ninth Circuit decision in *Buero v. Amazon.com Services, Inc.*, 61 F.4th 1031, 1033 (9th Cir. 2023). In *Buero*, the Ninth Circuit considered the compensability, under "both" the FLSA and Oregon state law (which aligned "with federal law regarding what activities are compensable") of time spent by employees waiting in line to undergo an employer "mandatory security screening" arising from employees choosing to leave the employer's premises for meal period breaks. The court held the answer to this question depended upon whether that activity was "an integral and indispensable part of an employee's principle activities." *Id*. Thus, and important to this Court, is that the Ninth Circuit applied Portal-to-Portal Act reasoning to a decision involving activities connected to meal periods. *Id*. Ignoring *Buero's* application of the Portal-to-Portal Act to meal breaks, Plaintiffs distinguish the facts in the case at bar from the facts in *Buero* because *Buero* asked about compensability of time waiting on line "if … [employees] choose to leave" the employer's premises; whereas, in this case, Plaintiffs are not choosing to leave but are "required to leave" Amazon's facility because of inadequate space for meal breaks. ECF No. 27 at 5-6. However, the decision in *Buero* did not focus on employee choice, but on whether the activity was integral and indispensable to the employees' principal activities. This is not surprising as the Supreme Court decision in *Integrity I* makes clear that whether an employer requires an activity is the wrong focus for the courts. 546 U.S. at 36.[8]

---

[8] Plaintiffs do not comment on the decision in *Vaccaro v. Amazon.com.dedc., LLC.*, Civil Action No. 18-11852 (FLW), 2020 WL 3496973 (D. N.J. June 29, 2020), which is cited by Amazon. In *Vaccaro*, the plaintiff contended she was not able to leave her workplace or "'engage in her own pursuits' during her meal breaks." *Id*. at *1. The court first discussed *Integrity I*, noting "that the same post-shift security screenings" were at issue in the *Vaccaro* case as were at issue in *Integrity I*, and that such screenings are "noncompensable 'postliminary' activities under the" FLSA. *Id*. at 2. After stating no New Jersey court had addressed this issue under the state's wage hour laws, or whether the Portal-to-Portal Act applied to New Jersey's regulatory scheme, the court found the PPA did not apply. *Id*. at 6. The court then found that when an employee chooses to take his meal break such that he is leaving the employer's facility, the consequence is the choice turns the act of going through a security screening into one primarily benefiting the employee and "serves no benefit upon Amazon." *Id*. The court concluded that "time spent on meal breaks during the course of the work day is not "hours worked" under New Jersey statutes. *Id*. Because the focus of *Vaccaro* was employee choice as applied to state law, the Court finds the decision without substantial value to the FLSA decision here.

Repeated focus on employee choice is an inadequate response to *Integrity I*, which found that an employer-require screening did does not turn time spent in that activity into compensable time. In fact, the Supreme Court admonished the district court by stating it "erred by focusing on whether the employer *required* a particular activity." *Integrity I*, 574 U.S. at 36 (emphasis in original). At the risk of redundancy, *Integrity I* plainly stated: "If the [integral and indispensable] test could be satisfied merely by the fact that an employer required an activity, it would sweep into 'principal activities' the very activities that the Portal-to-Portal Act was designed to address[,] … [and a] test that turns on whether the activity is for the benefit of the employer is similarly overbroad." *Id*.

In order to adopt Plaintiffs' analysis the Court would have to discard direction from the U.S. Supreme Court by focusing on something the employer requires the employee to do. The Court would have to find that despite the employees engaging in activity that is not "productive work that the employee is employed to perform," and despite being relieved of all work duties, going through screenings is compensable simply because it occurs after clocking out for a meal break rather than the end of the day. This result would not be logical under *Integrity I* or *Buero*, which applied the Portal-to-Portal Act paradigm to a mid-shift break. The Court is not prepared to take this leap. There is no precedent applicable to the FLSA (as opposed to state law) for the result Plaintiffs seek and what persuasive precedent there is, is to the contrary. The Ninth Circuit and potentially the Supreme Court may ultimately disagree; however, the Court finds the law as stated and, therefore, finds Plaintiffs do not state a claim under the FLSA for time spent in security screenings associated with meal periods.[9]

### 2. Time Spent Walking and Queueing to Clock Back In.

Having found time spent in meal period related security screenings is not compensable under the FLSA, the Court concludes neither walking after security screenings nor time spent in a que to clock back in at the end of the meal period is compensable under the FLSA.

---

[9] The issue of *de minimis* time is not discussed because there is no FLSA claim. Even if ultimately an appellate court disagrees with this Court's reasoning, the determination regarding the amount of time spent in the activities about which Plaintiffs complain is a question of fact and would not be dismissed under Federal Rule of Civil Procedure 12(b)(6).

First, the Court found no case in which time spent walking to commence eating a meal after clocking out or queueing (waiting) to clock back in at the end of a meal break was compensable under the FLSA. Second, under FLSA, and Portal-to Portal Act regulation, the contrary is generally found to result in the opposite result; that is, non-compensability. 29 U.S.C. § 254(a) ("walking … or traveling to and from the actual place of performance of the principal activity or activities which employee is employed to perform" is excluded from time for which an employer must pay wages under the FLSA); 29 C.F.R. § 790.8(c) ("activities such as checking in and out and waiting in line to do so would not ordinarily be regarded as integral parts of the principal activity or activities").

Third, the Ninth Circuit decision in *Busk v. Integrity Staffing* found not only that walking to a lunchroom was "not necessary to the plaintiffs' principal work as warehouse employees" but that to hold walking for purposes of taking a lunch was compensable time, when "walking before the workday starts and after it ends" is noncompensable "would be *incongruous*." 713 F.3d at 532.[10] Fourth, despite Plaintiffs' contention that "all walking time, if it is required work time, is compensable if not within the scope of the Portal-to-Portal Act" (ECF No. 27 at 19 *citing*, *IBP, Inc*, 546 U.S. at 37), *IBP, Inc.* reiterated that walking a long distance required by an employer to reach an employee's workstation, even if it occurs after clocking in, is not compensable. 546 U.S. at 41 ("For example, walking from a timeclock near the factory gate to a workstation is certainly necessary for employees to begin their work, but it is indisputable that the Portal-to-Portal Act evinces Congress' intent to repudiate *Anderson's* holding that such walking time was compensable under the FLSA."). Hence, walking time is not compensable simply because it occurs attendant to the commencement or cessation of work activities. And, while walking that occurred during a continuous work day—that is the part of the day not interrupted by a noncompensable meal period—is compensable, here it makes no sense to find walking time compensable when an employee is relieved of all work activities for a meal period but not compensable before the first compensable activity or last compensable activity of a work day. As discussed in *Integrity I* and above, given that

---

[10]   More specifically, the Ninth Circuit held: "Walking to the lunchroom is not necessary to the plaintiffs' principal work as warehouse employees. Moreover, though the Portal–to–Portal Act does not clearly preclude compensation for walking to the lunchroom, as it only expressly applies to walking before the workday starts and after it ends, it would be incongruous to preclude compensation for walking into work on the employer's premises, but require it for walking to the lunchroom." *Busk*, 713 F.3d at 532  (footnotes omitted).

security screenings are not integral or indispensable to Amazon employees' principal activities, time spent walking immediately after going through a security screening is not part of a continuous work day any more than walking to a workstation after clocking in or waiting to don specialized protective gear was found to commence a work day. *IBP, Inc*., 546 U.S. at 40, 41.

Further, while the Court recognizes there was no claim in *Busk* that employees were deprived of sufficient time to eat lunch (*id*. n.6), the Court finds unless an employee is entitled to eat lunch at his/her workstation, all employees walk before commencing and at the conclusion of a meal period. Depending on the size of an employer's property, the time spent walking could be quite short or far more substantial. For example, if an employee works in a small floor office, it might take no more than one or two minutes to walk to commence a meal break. In contrast, a non-exempt employee (one entitled to overtime under the FLSA) who works for a fulfillment center the employee might spend five or more minutes walking to and from their workstation at the commencement and cessation of a meal period thereby requiring them to do so before the official end of their meal period in order to ensure on-time re-commencement of their principal activities. If the amount of time spent walking or that employees were "required" to leave their workstations to take a meal break was dispositive of whether walking time is compensable, surely the Court would have found or Plaintiffs would have cited precedent for this proposition.

Time spent waiting in line to clock back in is also not compensable under the FLSA. It is unclear on what legal basis Plaintiffs assert that one to two minutes they may wait to clock in would be compensable. Other than conclusory statements in their Response to Amazon's Motion to Dismiss, Plaintiffs offer no argument to support this contention. *See* ECF No. 27 at 6 ("Plaintiffs' FLSA claims arise from Amazon's failure to pay overtime wages (since no wages whatsoever were paid) for time consumed in Meal Period Security Screenings, Secondary Breakroom Travel, and Meal Period End Ques) (internal quote marks omitted); 19-20 ("The plaintiffs assert that because most of them were required to travel to new workstations after their meal breaks their time expended in Amazon's mandatory Meal Period Security Screenings, Secondary Breakroom Travel, and Meal Period End Ques, were not subject to the Portal-to-Portal Act. FAC, Doc. 23, ¶ 48(b)). There is not another mention of the queueing to clock in at the conclusion of meal periods in Plaintiffs' Response

to Amazon's Motion to Dismiss. In the absence of a cohesive and persuasive argument, and given the Court could find no precedent supporting the compensability of queueing to clock in from a meal period in this case or in any factually similar case decided by a federal court, the Court concludes Plaintiffs cannot state a claim for unpaid wages or overtime under the FLSA arising from time spent queueing to clock in at the conclusion of Plaintiffs' meal period.

**VI.  ORDER**

Accordingly, IT IS HEREBY ORDERED that Defendant Amazon.com Services, LLC's Motion to Dismiss and/or Stay the Case (ECF No. 15) is GRANTED in part as follows:

1.  Plaintiffs' claims for unpaid wages under the FLSA for time spent in meal time security screenings and travel time after such screenings are dismissed.

2.  Plaintiffs' claim for unpaid wages under the FLSA for time spent queueing to clock in at the conclusion of meal periods is dismissed.

IT IS FURTHER ORDERED that Defendant Amazon.com Services, LLC's Motion to Dismiss (ECF No. 15) is DENIED without prejudice to the extent Defendant seeks dismissal of Plaintiffs' state law wage and waiting time claims.

IT IS FURTHER ORDERED that discovery is stayed as to Plaintiffs' state law claim until such time as the Nevada Supreme Court issues its decision in *Malloy v. Amazon.com Services, LLC*, Case No. 89314 (Nev. Oct. 24, 2024).

IT IS FURTHER ORDERED that the parties must notify the Court by submitting a status report and proposed discovery schedule and schedule for supplemental brief, if any, relating to Plaintiffs' state law claims no later than fourteen days after the Nevada Supreme Court issues a decision in *Malloy*.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Circulation of Notice of the Pendency of this Action Pursuant to 29 U.S.C. § 216(b) and for Other Relief (ECF No. 17) is DENIED as moot.

1    IT IS FURTHER ORDERED that Defendant Amazon's Motion to Strike (ECF No. 33) is DENIED as moot.

Dated this 7th day of January, 2025.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE